**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

               Plaintiff,

                                       Case No. 3:17-cv-739

v.

WAL-MART STORES, INC. and
WAL-MART STORES EAST, LP,

               Defendants.

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT PURSUANT TO FRCP 56**

Respectfully submitted by,

MWH Law Group LLP

By: */s/Warren E. Buliox*

Emery K. Harlan
State Bar No. 1000240
Warren E. Buliox
State Bar No. 1056215
Carlos R. Pastrana
State Bar No. 1088286
735 N. Water Street, Suite 610
Milwaukee, WI 53202
(414) 436-0353 Phone
(414) 436-0354 Facsimile
emery.harlan@mwhlawgroup.com
warren.buliox@mwhlawgroup.com
carlos.pastrana@mwhlawgroup.com

**COUNSEL FOR DEFENDANTS' WAL-MART STORES, INC. AND
WAL-MART STORES EAST, LP**

**TABLE OF CONTENTS**

**INTRODUCTION**...............................................................................................................1

**ARGUMENT**....................................................................................................................3

I.   THE EEOC HAS FAILED TO DEMONSTRATE THE EXISTENCE OF A TRIABLE
ISSUE OF FACT AS TO THE QUALIFIED INDIVIDUAL ELEMENT OF ITS
ADA CLAIMS.........................................................................................................3

    A.  Contrary to the EEOC's Arguments, a Full-Time Job Coach - - Even One Paid for by
Third Parties - - is Not a Reasonable Accommodation Mandated by the ADA.................3

        1.  The Holdings in *Hertz* and *Kleiber* Represent the Current State of Law Relative to
Full-Time Job Coaches, and the EEOC has Failed to Make the Case for
the Inapplicability of Those Decisions Here...................................................3

        2.  The EEOC Fails in its Efforts to Analogize Readers and Interpreters to the Job
Coaches who Actually Participated in the Performance of Essential Functions of
Mr. Reina's Job ...........................................................................................6

    B.  Notwithstanding the EEOC's Strawman Argument, the Undisputed Facts in the
Record Establish that Mr. Reina is Unable to Perform the Essential Functions of
His Job Without the Hands-On, Physical Help of His Job Coaches...................................8

    C.  The Undisputed Facts in the Record Demonstrate that Mr. Reina's Need for
Permanent, Full-Time Job Coaches Created an Undue Burden that the ADA Does
Not Require Wal-Mart to Accept .....................................................................................11

    D.  The Undisputed Facts in the Record Regarding the Work Performed by Mr. Reina's
Job Coaches and His Co-Workers Confirm that the Essential Functions of the
Cart Attendant Position Included Customer Centric Responsibilities, as well as
Cart Related Duties...........................................................................................................12

        1.  The EEOC's Misleading Record Citations Do Not Call Into Question the
Requirement that Cart Attendants Possess the Ability to Operate a Cart Caddy.........12

        2.  That Certain Customer Centric Responsibilities Did Not Occupy a Significant
Amount of Mr. Reina's Time and Are Also Part of Other Positions Does Not
Foreclose Them From Constituting Essential Functions for the Cart Attendant Job ..14

        3.  Mr. Reina's Positive Evaluations by Prior Managers Do Not Raise a Genuine
Issue of Material Fact as to Whether he Could Perform the Essential Functions
of his Job at the Time he was Placed on Leave.............................................16

4.  The Evidence in the Record does not Support the EEOC's Argument that Mr. Reina was Working in a Modified Position ................................................................18

    a.  The Undisputed Facts in the Record Show That Mr. Reina's Job Coaches Performed or Assisted with Virtually Every Task and Duty Set Forth in the Job Description for the Cart Attendant position................................................21

    b.  The Fact That Some of Mr. Reina's Managers Did Not Rate Him in Certain Categories Does Not Support the EEOC's Modified Job Claim .............22

    c.  The EEOC Has Failed to Even Specify What Duties Were Part of Mr. Reina's So-called Modified Position ...............................................................24

5.  The Undisputed Facts Regarding Julie Repka and Jeff Scheuerell's Actions in the Wake of Unsolicited Information They Received About Mr. Reina and His Job Coach Were Entirely Reasonable and Do Not Raise Any Issue as to Discriminatory Animus .................................................................................25

II.  THE EEOC HAS FAILED TO INTRODUCE SUFFICIENT EVIDENCE TO CREATE A TRIABLE ISSUE AS TO MR. REINA'S ALLEGED TERMINATION OR TO SUSTAIN ITS BURDEN OF PROOF AS TO THE INTERACTIVE PROCESS CLAIM IN THIS MATTER.....................................................................................................27

III. BASED UPON THE UNDISPUTED FACTS IN THE RECORD, SUMMARY JUDGMENT IS MERITED ON THE EEOC'S PUNITIVE DAMAGES CLAIM. ...............28

CONCLUSION ......................................................................................................30

## INTRODUCTION

Plaintiff EEOC concedes, as it must, that Mr. Paul Reina, an individual with multiple, severe impairments, cannot perform his job at Wal-Mart, without a full-time, permanent job coach. Stated another way, Mr. Reina needs the assistance of another individual at his side, every second, of every shift, in order for him to work as a Cart Attendant at Wal-Mart. Hence, the EEOC must convince this Court that a full-time, permanent job coach or helper, is a reasonable accommodation under the Americans with Disabilities Act ("ADA".) This Court should decline Plaintiff EEOC's invitation to become the first court in the country (based upon Wal-Mart's research) to interpret the ADA as requiring such an accommodation.

Even if this Court were to find that Wal-Mart is obligated by the ADA to allow Mr. Reina to have a full-time, permanent job coach as a condition of his employment, the EEOC's claims are still ripe for summary judgment because the evidence in the record establishes that Mr. Reina's multiple, severe impairments prevented him from performing the essential functions of his position without the hands-on, physical involvement of his "coach." The record is replete with admissions from his various coaches themselves that they pushed and steered carts, interacted with customers, operated and controlled the Cart Caddy and performed various other tasks that were part of Mr. Reina's job.

In addition, the EEOC has not succeeded in demonstrating a triable issue of fact as to Mr. Reina's qualifications by virtue of the satisfactory evaluations completed by Mr. Reina's prior management. There is no evidence in the record that Mr. Reina was meeting the performance expectations of the new store manager, Jeff Scheuerell, at the time Mr. Reina was placed on inactive status/leave. To the contrary, the evidence shows that Mr. Scheuerell had observed Mr.

Reina's job coach doing/performing tasks that were unquestionably part of Mr. Reina's job and did not think that was appropriate.

The EEOC also misses the mark with its contention that Mr. Reina was working in a so-called modified job that did not require him to perform all of the essential functions set forth in the Cart Attendant job description. Interestingly, the EEOC never identifies the complete set of duties or responsibilities Mr. Reina was responsible for in his alleged modified job.  In any event, it is clear that whatever arrangements existed prior to Mr. Scheuerell's arrival ended once he became the store manager.  For it is undisputed that it was his expectation that Mr. Reina perform all of the essential functions of his job as set forth in the position job description.

Finally, should the Court allow any of Plaintiff EEOC's ADA claims to proceed to trial, it should nevertheless preclude the agency from pursing its punitive damages claims. The undisputed evidence in the record establishes that Wal-Mart has implemented policies forbidding discrimination and gone to great lengths to ensure that qualified individuals with disabilities are afforded reasonable accommodations. Indeed, Wal-Mart has an entire department at its corporate office dedicated to assisting store associates in evaluating accommodation requests. Under these circumstances, Wal-Mart's alleged conduct does not merit punishment through punitive damages.

Because the EEOC has failed to present evidence demonstrating the existence of a genuine issue of material fact as to its claims in this matter, this Court should grant Wal-Mart's motion in its entirety and enter judgment for the Defendants.

**ARGUMENT**

I.  THE EEOC HAS FAILED TO DEMONSTRATE THE EXISTENCE OF A TRIABLE ISSUE OF FACT AS TO THE QUALIFIED INDIVIDUAL ELEMENT OF ITS ADA CLAIMS

    A.  Contrary to the EEOC's Arguments, a Full-Time Job Coach - - Even One Paid for by Third Parties -- is Not a Reasonable Accommodation Mandated by the ADA

        1.  The Holdings in *Hertz* and *Kleiber* Represent the Current State of Law Relative to Full-Time Job Coaches, and the EEOC has Failed to Make the Case for the Inapplicability of Those Decisions Here

Apparently recognizing the import of the *EEOC v. Hertz Corp.,* No. 96-72421, 1998 U.S. Dist. LEXIS 58 (E.D. Mich. January 6, 1998) and *Kleiber v. Honda Am. Mfg.*, 420 F. Supp. 2d 809 (S.D. Ohio 2006), *aff'd*, 485 F. 3d 862 (6th Cir. 2007) cases cited by Wal-Mart in its Opening Brief, the EEOC exerts tremendous energy advancing irrelevant points and arguments regarding those decisions. Yet, after the EEOC's full assault on *Hertz* (a case filed and lost by the EEOC) and *Kleiber*, the holdings in those cases remain unblemished and reflect the current state of the law with respect to reasonable accommodations and job coaches.

The EEOC attacks Judge Feikens' decision in *Hertz* by claiming that the court misapplied two prior decisions in ruling that the disabled employees in those cases were not qualified for their positions and that the Court's "observation" about the ADA not requiring the provision of a full-time job coach as a reasonable accommodation is mere *dicta*. The EEOC's arguments relative to *Hertz* are without merit.  As in this case, the job coaches at issue in *Hertz* were required to work with the employees on a full-time, permanent basis. *Id*. at * 4. Further, just like the case here, the employees in *Hertz* could not perform the essential functions of their jobs without permanent, full-time job coaches. *Id.* at * 12. Central to Judge Feikens' rejection of the EEOC's ADA claims in *Hertz* was his finding that employees there were not qualified for their positions because they required full-time job coaches in order to do their jobs. *Id.* at ** 11-12. Hence, Judge Feikens'

holding that the ADA does not require an employer to allow a full-time, permanent job coach as a reasonable accommodation was not mere *dicta* as asserted by the EEOC. Additionally, Judge Feikens' holding in this regard was based principally upon the EEOC's interpretative guidance, as opposed to the cases the EEOC points to in its opposition brief: *Gilbert v. Frank*, 949 F. 2d 637 (2nd Cir. 1991) and *Ricks v. Xerox Corp*, 877 F. Supp. 1468 (D. Kan. 1995). Specifically, Judge Feikens reasoned that the clear implication of the EEOC guidance was that a temporary job coach might be a reasonable accommodation under the ADA, but a full-time coach would not. *Id*. at * 15.[1] And finally, like the case here, the job coaches in *Hertz* were not paid for by the employer. *Id.* at ** 2-3. Rather, they were supplied by a third-party entity at no cost or expense to the employer. *Id.* Significantly, in rejecting the EEOC's argument there (and, essentially, its argument here) that the provision of a job coach is a reasonable accommodation because it was provided at no cost to the employer, Judge Feikens characterized that argument as "incredible." *Id.* at * 16.

The EEOC's attack upon *Kleiber* is even weaker. Once again, the agency seeks to diminish the holding in that case regarding permanent, full-time job coaches that it does not like, as mere *dicta*. But, as was the case with Judge Feikens' decision in *Hertz*, Judge James L. Graham's holding in *Kleiber* that a permanent, full-time job coach was not a reasonable accommodation is central to the court's finding that the employee was not a qualified individual within the meaning of the ADA. Equally unpersuasive is the EEOC's argument regarding the Sixth Circuit's appellate decision in *Kleiber*. The EEOC makes much of that court's opinion because it endorses the concept of an "accommodation within an accommodation," but that has nothing to do with the question of whether a permanent, full-time job coach accommodation is an accommodation that the ADA

---

[1] It is worth noting that the EEOC guidance cited in the 1998 *Hertz* decision has not been amended or modified in any way with respect to job coaches. That fact further undercuts the EEOC's position here. Presumably, the agency would have taken steps to modify or amend the guidance if it believed that courts were misinterpreting the guidance's temporary job coach provisions.

requires.  Indeed, even the EEOC acknowledges that the Sixth Circuit's decision did not disturb Judge Graham's ruling that full-time permanent job coaches are not a required reasonable accommodation under the law.[2]

The EEOC also seeks to explain away its interpretive guidance that served as the basis for Judge Feikens' holding on the concept of full-time, permanent job coaches as a reasonable accommodation. However, its arguments actually support Wal-Mart's position. Specifically, the EEOC cites a provision from its 1997 ADA guidance that provides, in part, that "[a]n employer also may be required to allow a job coach paid by a public or private social service agency to accompany the employee at the job site as a reasonable accommodation." *EEOC Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities*, EEOC Notice No. 915.002 (March 25, 1997). Contrary to the EEOC's contention, that sentence does not provide or suggest that an employer must allow a job coach paid for by a third-party social service agency to serve in that capacity on a full-time permanent, basis.  Rather, given the preceding sentence which provides that an employer may be required to provide a temporary job coach, the sentence cited by the EEOC simply makes it clear that an employer may be required to allow a job coach paid for by a third party (and not by it) onto its premises. Hence, the sentence cited by the EEOC hardly supports its position here.  Further, the EEOC conveniently omits a footnote to that guidance that has great import here. That footnote expressly defines a job coach as "a professional who assists individuals with severe disabilities with job placement and job training."  *Id*. at fn. 63. Job training and job placement are activities which, by their very nature, are limited in duration and are not provided to an employee indefinitely.  Here, Mr. Reina has been doing the same job for about 17

---

[2] Also undercutting the EEOC's position regarding the supposed requirement for a permanent, full-time job coach is language in a case it relies upon - - *EEOC v. Dollar Gen. Corp.*, 252 F. Supp. 2d 277 (M.D.N.C. 2003). There, the court observed that "a full-time job coach providing more than training cannot be a reasonable accommodation." *Id*. at 291.

years. There is no evidence in the record that his job coaches were professionals in the field of training or placement or that those coaches were providing on-going training to him relative to performing the Cart Attendant position or providing him placement services. (*See* Defendants' Reply to EEOC Response to Proposed Facts at ¶¶ 49, 107, 139.) Hence, it is far from clear that the services provided by Mr. Reina's so-called job coaches, even if provided on a short-term basis, would represent the sort of reasonable accommodation contemplated by the EEOC's own guidance.

2.      The EEOC Fails in its Efforts to Analogize Readers and Interpreters to the Job Coaches who Actually Participated in the Performance of Essential Functions of Mr. Reina's Job

Given the long-standing holdings in *Hertz* and *Klieber* providing that the ADA does not obligate employers to provide employees with full-time, permanent job coaches as an accommodation, the EEOC attempts to compare job coaches to readers and interpreters and argues that job coaches should be afforded the same status for ADA purposes. There are flaws in the EEOC's argument. First, unlike the situation with job coaches, the ADA expressly lists readers and interpreters as a form of reasonable accommodation in the text of the ADA itself. 42 U.S.C. §12111(9)(B). Second, as set forth above, the agency itself contemplates job coaches as providing services that are, by their very nature, short-term and temporary - - job training and job placement. By contrast, someone who is blind and in need of a reader, or hearing impaired and in need of an interpreter, will generally need those services on an on-going, permanent basis. In fact, it is hard to imagine how the accommodation of a reader or interpreter could possibly be needed on just a temporary basis. Hence, the logical import of Congress including interpreters or readers as a reasonable accommodation in the text of the ADA is the prospect that an employer may be required to provide that accommodation indefinitely. That reasoning does not extend to job coaches.

Additionally, in support of its argument, the EEOC cites a Maryland district court case, *Searls v. John Hopkins Hosp.,* 158 F. Supp. 3d 427 (D. Md. 2016) where a court found that employing a full-time interpreter was a reasonable accommodation based upon the facts of the case. The *Searls* decision however does not support the EEOC's position here in any way, shape or form. The role of the proposed interpreter in that case was merely to assist the nurse in communicating with patients and staff in limited situations - - often involving patient alarms. *Id.* at 437. The court in *Searls* expressly observed that it would be the nurse <u>and</u> <u>not</u> the interpreter that would be performing virtually all of the essential functions of the nursing position. *Id.* Further, the court expressly noted that the ADA specifically identifies "qualified readers or interpreters" as an example of a reasonable accommodation. *Id.* at 435. It was under those unique factual circumstances that the court in *Searls* found that the proposed accommodation there was reasonable.

In contrast to the facts of *Searls*, the concept of job coach as a reasonable accommodation is not incorporated directly into the text of the ADA as is the case with readers and interpreters. Instead, as set forth above, it appears in the EEOC's guidance and then only as a <u>potential</u> reasonable accommodation when the coach is <u>only</u> providing coaching services on a <u>temporary</u> basis. Moreover, the undisputed facts in this record show that Mr. Reina's coaches were not simply serving as his eyes and ears. (*See* Defendants' Reply to EEOC Response to Proposed Facts ¶¶ 27, 42, 61, 95, 111.) They were his hands, and feet and voice and cognitive abilities as well. They pushed and gathered carts; guided and steered carts; picked up garbage and provided customer service on his behalf (*Id.* at ¶¶ 95-98, 100-101, 103, 111, 113, 115, 117-118, 122-123, 130, 131-133, 135-138, 141-142, 144, 145.) Very simply, they did far more than coach. Accordingly, the

EEOC's attempt to leverage the holding of *Searls* and the ADA's general treatment of readers and interpreters as reasonable accommodations falls flat.[3]

In short, the district court decisions in *Hertz, Kleiber* and *Dollar*, as well as each and every guidance from the EEOC on the subject of job coaches, support Wal-Mart's position in this case that employers are not obligated to provide employees with full-time, permanent job coaches, no matter who pays for them.  Such an accommodation is not a reasonable one under the ADA. Hence, the EEOC cannot meet its burden of establishing that Mr. Reina is a qualified individual with a disability.

B.    Notwithstanding the EEOC's Strawman Argument, the Undisputed Facts in the Record Establish that Mr. Reina is Unable to Perform the Essential Functions of His Job Without the Hands-On, Physical Help of His Job Coaches

As set forth in its Opening Brief, Wal-Mart maintains that Mr. Reina's job coaches were required to physically assist him in performing the essential functions of his job and hence, that renders him unqualified for his position.  Apparently, recognizing that long-standing precedent within the Seventh Circuit and elsewhere that a qualified individual for ADA purposes must be able to perform the essential functions of his or her job without help in doing so by co-workers or other third parties, the EEOC resorts to constructing strawman arguments relating to Wal-Mart's position on this issue and making irrelevant, speculative claims about what the interactive process might have yielded.  Try as they might, the undisputed evidence in the record shows that each and every one of Mr. Reina's job coaches were required to assist him in various essential functions of

---

[3] The EEOC attacks the Ninth Circuit's decision in *Miller v. Santa Clara County Library* 24 F App'x. 762 (9th Cir. 2001) because it is non-precedential and purportedly should not have been cited in accordance with Ninth Circuit Rule 36-3. Further, it argues that the case is factually inapposite, since Mr. Reina could do his job. Initially, that Ninth Circuit Rule does not forbid citation of that case outside of the Ninth Circuit. Indeed, the Court in EEOC v. Dollar Gen. Corp., *supra*, cited and discussed the Miller decision in its opinion. Further, like the employee in *Miller,* the evidence here clearly demonstrates that Mr. Reina needed the help of a job coach to perform the essential functions of his Cart Attendant job.  That Mr. Reina is allegedly better suited for his cart attendant job than the employee in *Miller* was for his library job, does not detract from the court's observation about the limits of the ADA's reasonable accommodation requirement.

his job. Hence, the EEOC cannot raise a triable issue as to Mr. Reina's standing as a qualified individual.

The undisputed facts in the record confirm that each of Mr. Reina's job coaches performed a variety of physical tasks in connection with the functions of his Cart Attendant position. (*See* Defendants' Reply to EEOC Response to Proposed Facts at ¶¶ 95, 96, 97, 98, 100, 101, 103, 111, 115, 117, 118, 122, 123, 130, 131, 132, 133, 135, 136, 137, 138, 141, 142, 144, 145.) Throughout its opposition filing, the EEOC argues that Mr. Reina's job coaches never performed any of the essential functions of his job. While the evidence actually does establish that they were performing his duties, the EEOC grossly misstates Wal-Mart's position. Even though the EEOC challenges certain duties associated with Mr. Reina's position as being marginal, non-essential functions, even the agency concedes pushing carts was an essential function. (*Id.* at 47.) Based upon the record here, it is clear that Mr. Reina's job coaches performed tasks related to that function. For example, Mr. Coppernoll testified that he used the Cart Caddy a dozen or more times per <u>shift</u> when it was operational, picked up garbage out of carts and gathered carts and flatbeds. (*Id.* at ¶¶ 113, 123, 125.) Mr. Reina's mother testified she too would hold carts for Mr. Reina to keep them from straying and would steer the carts as he pushed them. (*Id.* at ¶ 141.) Mr. Fallon testified that he would steer the carts by grabbing the front of them in order to keep the carts in line. (*Id.* at ¶¶ 101, 135.) Mr. Polizzi admitted that when working with Mr. Reina she would collect carts from the parking lot and helped steer the carts as Mr. Reina pushed them in order to keep them in line. (*Id.* at ¶ 130.) She also would position herself in front of the line of carts as they were being pushed because Mr. Reina lacked the ability to stop them. (*Id.* at ¶ 131.)

As to duties which the EEOC challenges as not being essential functions of Mr. Reina's position (a contention Wal-Mart vigorously opposes below), the record is clear that his job coaches

actively assisted him by performing aspects of those functions themselves. As an example, it is undisputed that Mr. Reina's primary job coach, Matt Coppernoll, assisted customers who needed information.[4] (*Id*. at ¶ 118, 119.) Mr. Coppernoll testified that Mr. Reina could not communicate or assist customers himself. (*Id*. at ¶ 117) Similarly, Mr. Fallon testified that he [and not Mr. Reina] would assist customers by giving them directions to the restroom. (*Id*. at ¶ 138.) Further, Ms. Polizzi admitted that she would assist Mr. Reina by taking items out of shopping carts and loading them into customers' vehicles. (*Id*. At ¶ 133.) And Ms. Slaght testified that when she worked with Mr. Reina they operated as a team and she would place bags into customers' vehicles for him (*Id*. at ¶ 144.) Notwithstanding this extensive, undisputed evidence of hands-on assistance being provided by job coaches which unquestionably exceeded their supposed, limited, "eyes and ears" roles, the EEOC argues that none of this assistance was necessary. But missing from the record is any testimony from Mr. Reina or any medical expert supporting that claim. By contrast, the record contains testimony from the job coaches themselves that their performance of a number of these tasks was necessary. [5] (*Id*. at ¶¶ 111-113, 118-120, 122-125, 131, 133, 135-136, 138, 142, 144.)

Nor does the EEOC help its cause by repeatedly pointing out that no one from Wal-Mart stopped Mr. Reina's job coaches from performing duties that were part of his job or that Wal-Mart could have addressed any concerns in the interactive process. Even if true, those points are entirely

---

[4] The EEOC makes the incredible argument that because Mr. Reina can wave at customers, he can communicate with them and hence perform his customer service duties. The evidence in the record clearly establishes that Mr. Reina is unable to communicate with customers in any meaningful manner. Initially, his own physician states that Mr. Reina is essentially non-communicative and that even with the presence of his mother communication is difficult. (Dkt. 23 at ¶73.) Indeed, even with the help of several ASL interpreters, Mr. Reina could not be sworn in at his deposition or communicate with the interpreters in any substantive manner. (*Id.* at ¶75). Hence, the EEOC's claim that Mr. Reina could effectively communicate with customers is specious.

[5] To support its argument that Mr. Reina could handle the cart pushing essential function without assistance from his job coaches, the EEOC relies, in part, on deposition testimony from one of Mr. Reina's substitute coaches, Mike Fallon, that indicates Mr. Fallon steered carts because he thought it would be safer to do so. (*See* Dkt. # 51 at ¶35.) But that is precisely Wal-Mart's point. Mr. Reina could not safely perform this essential function without his job coach's hands-on, physical assistance.

irrelevant at this stage of the case. In order to move its claims past the summary judgment phase, the EEOC must demonstrate the existence of a triable issue as to Mr. Reina's ability to perform the essential functions of his job without the enlistment of another person helping him do so. *See Majors v. GE*, 714 F. 3d 527, 534 (7th Cir. 2013.) In fact, an employer's failure to participate in the interactive process does not even result in liability unless the employee can demonstrate that he or she is a qualified individual under the ADA in the first place. *Id*. at 535. That Wal-Mart allegedly failed to object to this arrangement does not speak to Mr. Reina's ability to perform the essential functions of his Cart Attendant job. Further, and of course, the EEOC does not cite even one single case to support its argument.

In short, the undisputed evidence of the job coaches' extensive, hands-on, physical assistance to Mr. Reina in performing various aspects of his job - including his pushing of carts - precludes the EEOC from establishing that Mr. Reina is a qualified individual under the ADA and should cause the Court to reject all of the agency's claims in this matter.

C.    The Undisputed Facts in the Record Demonstrate that Mr. Reina's Need for Permanent, Full-Time Job Coaches Created an Undue Burden that the ADA Does Not Require Wal-Mart to Accept

The EEOC does not express disagreement with Wal-Mart's contention that a reasonable accommodation which presents legal or safety risks may be found to represent an undue burden that an employer may not be required to accept. Rather, the EEOC merely argues that the risks identified are too speculative in nature and would preclude accommodation involving third parties. Of course, the EEOC ignores the undisputed evidence that Mr. Coppernoll forcedly restrained Mr. Reina on occasions during his time as Mr. Reina's job coach. (Defendants' Reply to EEOC Response to EEOC Proposed Facts at ¶¶ 25, 28, 87.)  Further, it is undisputed that Mr. Reina's job coaches frequently interacted with customers - - including assisting in loading their vehicles - -

during the course of assisting Mr. Reina in his job. (*See Id.* at ¶¶ 117, 118, 119, 124, 132, 133, 138.) There is basis to conclude that this sort of action will be required of future job coaches who are engaged to help Mr. Reina do his job.

It is not fearmongering for Wal-Mart to state the obvious - facilitating access for third parties to Wal-Mart's customers - presents real risks of liability to Wal-Mart. The ADA simply does not require Wal-Mart to accept such risks in the name of providing Mr. Reina with the sort of accommodation being sought on his behalf here. Accordingly, even if this Court were to conclude that a permanent, full-time job coach, working with Mr. Reina every second, of every shift, is a possible reasonable accommodation, Wal-Mart is still entitled to summary judgment on the EEOC's claims because that accommodation would present an undue burden.

> D.    The Undisputed Facts in the Record Regarding the Work Performed by Mr. Reina's Job Coaches and His Co-Workers Confirm that the Essential Functions of the Cart Attendant Position Included Customer Centric Responsibilities, as well as Cart Related Duties

> > 1.    The EEOC's Misleading Record Citations Do Not Call Into Question the Requirement that Cart Attendants Possess the Ability to Operate a Cart Caddy

As set forth above, Plaintiff EEOC concedes that transporting carts is an essential function of the Cart Attendant position Mr. Reina holds. But despite the undisputed evidence that the Cart Attendant job description specifically delineates the operation of cart retrieval equipment as an essential function, the agency demurrers on that point. This is likely on account of the undisputed evidence from Mr. Reina's primary job coach, Matt Coppernoll, that he was unsuccessful in teaching Mr. Reina how to operate the Cart Caddy and that Mr. Reina could not safely operate the Cart Caddy due to his inability to anticipate direction and speed of cars (Defendants' Reply to EEOC Response to Proposed Facts at ¶ 114.)

The EEOC anchors its position largely on testimony from two supervisors at Wal-Mart - Leah Stroh and Ann Admacyzk. In response to general questions as to whether Cart Attendants could manually push carts as opposed to using the Cart Caddy, both agreed that it was permissible, but that testimony is hardly fatal to Wal-Mart's contention about the Cart Caddy. Even if Cart Attendants generally have discretion as to whether to use the Cart Caddy in the normal course of operations, nothing would preclude their manager or supervisor from directing that the employee use the Cart Caddy in a particular instance. The belief of Mr. Reina or one of his job coaches that he is able to more efficiently move carts manually is irrelevant given that the law affords management the right to exercise its business judgment as to matters in the workplace. *See Chiaramonte v. Fashion Bed Group*, 129 F. 3d 391, 400 (7th Cir. 1997) (noting that the courts do not sit as a super-personnel department and reexamine and employer's business decisions.)

Further, it is undisputed that Cart Attendants, by company guidelines, were forbidden from manually moving more than 10 carts at a time. (Defendants' Reply to EEOC Response to Proposed Facts ¶¶ 51, 112.) Hence, use of a Cart Caddy is the only means by which Cart Attendants could move more than 10 carts at a time. (*Id.* at 51, 63, 112.)

Equally unpersuasive is the EEOC's argument that a Cart Caddy cannot be an essential function because it is just a means for accomplishing cart retrieval. In support of its position, the EEOC cites just one case that references language to the ADA's Legislative history. However, the EEOC is apparently unaware of the host of court decisions that have repeatedly found that the ability to operate machinery, tools and equipment are essential functions of a particular job. *See* e.g. *Scott v. City of Yuba City, Dep't of Pub. Works*, No. CIV 5-08-873 HCK /GGH, 2009 U.S. Dist. LEXIS 115482 at * 31 (E.D. of Ca. December 11, 2009) (operation of heavy machinery like sewer jet an essential function of maintenance worker position.); *Lockett v. Bd. of Comm'r of*

13

*County of Allen*, No. 1:07-CV-270-TS, 2009 U.S. Dist. LEXIS 76296 at *25 (N.D. Ind. August 26, 2009) (operation of chain saw an essential function for brush removal); *Sharpe v. Henderson*, No. CV-00-71-ST, 2001 U.S. Dist. LEXIS 19682 at *(D. Ore. October 19, 2001) (in case decided under the Rehabilitation Act of 1973, operation of mail processing machines found to be essential function of Postal Worker's job); *Scott v. City of Yuba City, Dep't of Pub. Works*, No. CIV 5-08-873 HCK /GGH, 2009 U.S. Dist. LEXIS 115482 at * 31 (E.D. of Ca. December 11, 2009) (operation of heavy machinery like sewer jet an essential function of maintenance worker position).

And finally, the EEOC fails to address the undisputed evidence in the record regarding the pervasive use of the Cart Caddy by his primary job coach and other cart attendants. (Defendants' Reply to EEOC Response to Proposed Facts ¶¶ 51, 52, 54, 56, 63, 69, 70, 112, 113, 115, 115, 116, 137.)  This undisputed evidence fully supports Wal-Mart's contention that the ability to operate the Cart Caddy is an essential function of that job.

      2.    That Certain Customer Centric Responsibilities Did Not Occupy a Significant Amount of Mr. Reina's Time and Are Also Part of Other Positions Does Not Foreclose Them From Constituting Essential Functions for the Cart Attendant Job

Seizing upon one of Mr. Reina's former manager's estimate that 95% of the Cart Attendant job consists of moving carts, and evidence that other positions at the Beloit Store provide customer service, the EEOC strenuously opposes Wal-Mart's contention that various customer service related tasks like acknowledging customers and resolving customer issues and concerns are essential functions of the Cart Attendant job.  Once again, the EEOC's efforts fall flat. Initially, by narrowly focusing upon the amount of time Cart Attendants spend on customer service tasks, the EEOC eschews the express provisions of the regulations implementing the ADA - - 29 C.F.R.§1630.2(n)(3)(i) – (vii). Consideration of these factors weigh heavily in favor of a finding

that the customer service tasks are essential functions. Specifically, it is undisputed that the customer services tasks are set forth in the job description governing Mr. Reina's job. (Defendants' Reply to EEOC Responses to Proposed Facts ¶ 45.)  Further, there is no dispute that all of Mr. Reina's peers have performed customer service tasks as part of their cart attendant responsibilities. Indeed, Mr. Reina's job coaches testified that they observed other Cart Attendants helping customers by answering questions, transporting merchandise to customers' cars and promoting products and services (*Id*. at ¶¶ 62, 64, 65, 67, 69, 120, 132, 133, 138, 145.)  In fact, each of Mr. Reina's job coaches testified that they performed customer service tasks while working at the Beloit Store. They helped load groceries into customers' cars, provided directions and brought carts to customers needing them. (*Id*. at ¶¶ 117, 118, 119, 120, 132, 133, 138.)  With respect to the "consequences" factor, the EEOC has introduced evidence that there are other employees at the store who could help customers with merchandise and answer questions.  While that is true, the EEOC also acknowledges that customer service is a major focus at Wal-Mart. (*Id*. at ¶¶ 59, 117, 132, 145.)  Moreover, it is important to note that Mr. Reina spent most of his time working in the parking lot at Wal-Mart. Accordingly, in many instances, Mr. Reina would be the first Wal-Mart employee that customers had contact with. (*See* Defendants' Response to EEOC Proposed Facts ¶ 56.)  Obviously, placing customers in a situation where their first contact with a Wal-Mart employee is someone who lacks the ability to effectively communicate with them or answer even basic questions is not the sort of outcome a retailer like Wal-Mart would desire. Lastly, while the amount of time spent performing a task is a consideration in determining whether it constitutes an essential function, even a task that comprises just 5% of an employee's time can be deemed an essential function. *See Emerson v. N. States Power Co.,* 256 F. 3d 506, 513 (7th Cir. 2001) (task constituting just 5% of employee's duties deemed an essential function of employee's position.)

On balance, the factors from the regulations strongly compel a finding that the customer service tasks that Mr. Reina was incapable of providing on his own are essential functions of his Cart Attendant position. *Sullivan v. Spee-Dee Delivery Serv.,* 138 F. Supp. 3d 1050 (W.D. Wis. 2015), a case cited by the EEOC in support of its position, is factually inapposite and does not support a finding that the customer service functions of the Cart Attendant position were marginal. In that case, there was evidence in the record indicating that the employees worked together as a team.  *Id.* at 1055. By contrast, the undisputed evidence in this record is just the opposite.  The Cart Attendants generally work independent of one another and not in teams. (*See* Defendants' Reply to EEOC Response to Proposed Facts ¶ 60.) Hence, unlike the case in *Spee-Dee Delivery Service,* there is no other Cart Attendant who would be available to easily handle Mr. Reina's customer service responsibilities. That there may have been store greeters and others at the store who could assist with customer service is of no moment. As a person who generally works in the parking lot, Mr. Reina would, in many instances, be the first person to encounter a customer once a customer enters Wal-Mart's premises. (*See* Defendants' Response to EEOC Proposed Facts ¶ 56.) It would be entirely unreasonable for Mr. Reina (or any Cart Attendant) to be excused from providing the excellent service to those customers that Wal-Mart expects.[6]

3. Mr. Reina's Positive Evaluations by Prior Managers Do Not Raise a Genuine Issue of Material Fact as to Whether he Could Perform the Essential Functions of his Job at the Time he was Placed on Leave

Contrary to the EEOC's arguments, the positive evaluations Mr. Reina received in the past are not evidence that he could perform the essential functions of his position at the time he was placed on leave, for several important reasons.  First, the evaluations covered periods prior to 2015

---

[6] *See* Defendants' Reply to EEOC Response to Proposed Fact ¶ 47, relative to the EEOC's misleading factual assertion regarding the percentage of time Cart Attendants spent on cart-related duties.

- - the year the store manager took over the Beloit Store and the year Mr. Reina was placed on leave. The relevant time period for assessing what Mr. Reina was able to do was June of 2015 - the month and year he stopped reporting to work at Wal-Mart. The EEOC utterly ignores the cases cited by Wal-Mart which confirm that the relevant timeframe for assessing a plaintiff's qualifications is the date when the alleged adverse action occurs. *See e.g. Bay v. Cassens Transp. Co.*, 212 F. 3d 969, 974 (7th Cir. 2000); *Weiler v. Household Fin. Corp.*, 101 F. 3d 519, 524 (7th Cir. 1996); *Payton v. Jewel Foods Stores, Inc.*, 120 F. Supp. 3d 794, 800 (N.D. Ill. 2015). There is simply no evidence in the record as to how his performance (or lack thereof) had been formally evaluated in 2015. The store manager at the time of the alleged adverse action, Jeff Scheuerell, had briefly observed Mr. Reina and his job coach working and was so concerned by what he saw that he elevated his concerns to the corporate office. (Defendants' Reply to EEOC Responses to Proposed Facts at ¶¶27, 28, 29, 30.)

In short, there is no evidence that Mr. Reina had been deemed to be meeting the expectation of management at the point in time when the employment action at issue here took place. Second, as a matter of law, evaluations are insufficient to establish that an employee is a qualified individual for ADA purposes. That was the holding in *Browning v. Liberty Mut. Ins. Co.*, 178 F. 3d 1043, 1048 (8th Cir. 1999). The EEOC failed to even acknowledge this decision in its opposition brief. Third, a plain review of the evaluations reveals that they do not purport to track and assess Mr. Reina's performance as to each of the tasks and responsibilities which represented essential functions of his position. For example, there is no section on the evaluations for rating Mr. Reina's performance in terms of operating the Cart Caddy, answering customer questions or loading merchandise into customer vehicles. (*See* Dkt. 53 at Exs. 1-17.) In fact, a number of the evaluations cited by the EEOC do not even rate Mr. Reina in terms of his productivity in pushing carts. (*See*

*Id.*) Further, as noted by the EEOC, a number of the evaluations provide "N/A" with respect to a variety of categories that relate to tasks and responsibilities that are part of the essential functions of Mr. Reina's job (Defendants' Reply to EEOC Responses to Proposed Facts at ¶ 47.) Finally, that the evaluations are an improper tool for gauging Mr. Reina's own qualifications as a Cart Attendant is made clear by the undisputed evidence in the record that he was aided by all of his job coaches in the performance of his tasks and responsibilities (*Id.* at ¶¶ 95, 96, 97, 98, 100, 101, 103, 111, 113, 115, 115, 117, 118, 122, 123, 130, 131, 132, 133, 135, 136, 137, 138, 141, 142, 144, 145.)  Hence, the evaluations necessarily assess not just Mr. Reina's performance, but also the work contributed by his job coaches.  This fact is confirmed by two of Mr. Reina's supervisors who actually completed evaluations on him (*Id.* at ¶¶ 100, 102.) In sum, the EEOC does nothing to advance its interests by relying upon evaluations by Mr. Reina's former supervisors, relating to points in time that are distant from the period when he was placed on leave.

> 4.    The Evidence in the Record does not Support the EEOC's Argument that Mr. Reina was Working in a Modified Position

In its opposition brief, the EEOC argues that Mr. Reina had been given a so-called "modified position" by Wal-Mart and that, irrespective of whether he was able to perform all the essential functions of the Cart Attendant job, he was able to perform all the duties of this "modified position," and did so for 17 years. The EEOC's position is almost solely based upon its interpretation of *EEOC v. Dollar General Corp.,* supra. However, *Dollar General* is factually distinguishable from the present case. In that case, the employer did not provide any evidence to refute the employee's allegation that she had been expressly hired to perform a job that did not include all of the essential functions of the standard position, nor any evidence indicating that she had been hired to perform all the "essential functions" enumerated in the job description for the standard position. *Id. at 287.* Moreover, there was evidence that the job description was not

accurate or, at a minimum, not applicable in all situations, and that some managers had allowed some employees to bypass tasks listed on it. *Id. at 286.* Finally, one of the employer's managers testified that she had once hired an individual to perform only one of the functions listed in the job description. *Id.* None of those circumstances are even remotely present in the case before the Court.

To be sure, Mr. Reina was hired by Wal-Mart in October of 1999 and did not submit accommodation paperwork until January of 1999 requesting, among other things, to be allowed an "aide" to work with him and to not be asked to "do tasks he is incapable of handing." (Defendants' Statement of Proposed Material Facts (Dkt. # 23) ("DPFOF") at ¶¶ 1, 2, 15 and 17; *also see* Defendants' Reply to the EEOC's Responses to the same.) As such, the notion that he was hired into a modified position is not supported by the record. Also, Mr. Reina's long-term, 10-year job coach testified that Mr. Reina, with his assistance, performed virtually all (except for one) of the stated functions of the Cart Attendant position as enumerated in the Cart Attendant job description, including non-cart related functions. (Defendants' Reply to EEOC Responses to Proposed Facts at ¶¶ 45, 46, 47, 111, 113, 117, 118, 119, 120, 122, 125.) He further testified that these functions were a part of Mr. Reina's job. (*See Id.*) Significantly, a job description signed on behalf of Mr. Reina noted all of the essential functions at issue as being a part of his job. (Defendants' Reply to EEOC Responses to Proposed Facts at ¶ 46.) In short, the factual circumstances in this case are quite different than those in *Dollar General*.

As was discussed above, Mr. Reina is not a qualified individual with a disability because he could not perform the essential duties of his position. In its opposition brief, the EEOC argues that "logically[, the] new position is that which the individual 'holds' under the ADA for purposes of determining whether he was qualified." Beyond the EEOC's "logic," this theory is conspicuously unsupported by any Seventh Circuit authority, and by any authority at all beyond

the EEOC's specious, but ultimately "generous" interpretation of *Dollar General.*

The EEOC's reliance upon the Seventh Circuit's decision in *Shell v. Smith*, 789 F. 3d 715 (7th Cir. 2015) does not support its position either.  *Shell* is a political case.  There, the new mayor's political appointee terminated a longstanding maintenance employee based entirely upon review of the employee's job description and learning that the employee lacked the necessary licensure to perform one of the purported essential duties of his job—driving buses. Significantly, the job description there did not expressly state that driving a bus was a mandatory duty. *Id.* at 718 Nor was driving a bus something that he had ever done on the job. *Id.* Based largely on those facts, the Seventh Circuit held that there was a triable issue as to whether driving a bus was an essential function for the plaintiff's position. *Id.* at 721 The facts in *Shell* stand in stark contrast to those here. Initially, unlike the manager in *Shell*, the record here clearly indicates that Jeff Scheuerell did not rely solely upon a job description in determining that Mr. Reina did not appear to be able to perform the essential functions of his job. He and Ms. Repka personally took the time to observe Mr. Reina and his job coach at work. (Defendants' Reply to EEOC Responses to Proposed Facts at ¶¶ 22, 27.)  And it is really undisputed that they observed Mr. Reina doing nothing work related as Matt Coppernoll performed work related tasks for Mr. Reina. (*Id.* at ¶ 27.) None of this was consistent with Mr. Scheuerell's expectations for Cart Attendants over his several years working as a Store Manager at Wal-Mart and understanding of the duties Cart Attendants historically performed. *(Id.* at ¶¶ 51, 52.) Moreover, unlike the situation in *Shell*, the job description which set forth the essential functions of Mr. Reina's job is not equivocal. (*Id.* at ¶¶ 45, 46.)  It states the essential functions in clear, mandatory language (*Id.*) And finally, while the plaintiff in *Shell* had not performed the essential functions at issue there, here, there is no dispute that substantially every essential function identified on the job description had been performed by the unit comprised of

Mr. Reina and his job coach. (*Id*. at ¶¶ 95, 96, 97, 98, 100, 101, 103, 111, 113, 115, 117, 122, 123, 130, 131, 132, 133, 135, 136, 137, 138, 141, 142, 144, 145.) These substantial differences between the facts in *Shell* and those here render it a poor foundation for the EEOC to erect its "modified position" argument upon.

The EEOC's position that Mr. Reina had been hired to perform the duties of a "modified position" is little more than a fallback argument that is unsupported by anything in the record. The fact remains that the ADA does not require employers to eliminate essential functions from positions, and that the EEOC's own guidelines contemplate that the use of full-time helpers to perform the essential functions of a position is not a reasonable accommodation under the ADA. Plaintiff cannot create triable issues of fact out of whole cloth by merely stating that Mr. Reina worked in a "modified position" that enabled him to perform the duties of his job.

> a. The Undisputed Facts in the Record Show That Mr. Reina's Job Coaches Performed or Assisted with Virtually Every Task and Duty Set Forth in the Job Description for the Cart Attendant Position

The EEOC argues that Mr. Reina's job coach did not perform Mr. Reina's job for him but merely "assisted" him so that Mr. Reina could successfully perform the functions of his supposedly "modified position" in keeping with the statutory purpose of a reasonable accommodation. In arguing against the issuance of summary judgment, the EEOC unconvincingly states that a jury could find that Mr. Reina had performed the essential functions of the "modified position" into which he was hired and had performed for years. *Id.* This position is easily refuted by the incontrovertible fact that Mr. Reina could not perform a number of the essential functions listed in the Cart Attendant job description by himself. (Defendants' Reply to EEOC Responses to Proposed Facts at ¶¶ 95, 96, 97, 98, 100, 101, 103, 111, 113, 114, 115, 117, 118, 119, 122, 123, 130, 131, 132, 133, 135, 136, 137, 138, 141, 142, 144, 145.) That said, while the EEOC claims that Mr.

Reina could gather and collect carts by himself, it acknowledges that he needed assistance from his job coaches to keep him focused and keep him on task. (*Id.* ¶¶ 61, 95, 125.) It also acknowledges that job coaches were sometimes needed to steer carts for Mr. Reina. (*See Id.* at ¶¶ 101, 103, 111, 130, 131, 135, 141.)

In its opposition brief, the EEOC has somehow created a truncated Cart Attendant position in which Mr. Reina would, presumably, only be responsible for pushing around a small number of carts, picking up trash in the parking lot, and breaking down boxes. Notably, even these tasks required some level of assistance from a permanent job coach. (*Id.* at 96, 122, 123, 125, 142.) What the facts of the case unequivocally present here is an employee who could not perform the essential functions of his position by himself without the permanent presence and assistance of a third party. (*Id.* at 95, 96, 97, 98, 98, 100, 101, 103, 111, 113, 115, 117, 118, 122, 123, 124, 125, 130, 131, 132, 133, 135, 136, 137, 138, 141, 142, 144, 145.) The ADA simply does not compel employers to create "modified positions" that eliminate essential job functions in order to accommodate disabled employees. *See Jay v. Intermet Wagner Inc.,* 233 F.3d 1014, 1017 (7th Cir. 2000); *Hansen v. Henderson,* 233 F.3d 521, 523 (7th Cir. 2000); *Malabarba v. Chicago Tribune Co.,* 149 F.3d 690, 700 (7th Cir. 1998); *Gile v. United Airlines, Inc.,* 95 F.3d 492, 499 (7th Cir. 1996); *Williams v. Eastside Lumberyard & Supply Co.,* 190 F. Supp. 2d at 1104, 1113 (S.D. Ill. 2001).

    b. The Fact That Some of Mr. Reina's Managers Did Not Rate Him in Certain Categories Does Not Support the EEOC's Modified Job Claim

Faced with the fact that it has absolutely no evidence to support its "modified position" argument, the EEOC relies upon Wal-Mart's hiring of Mr. Reina with knowledge of his limitations and not requiring him to perform certain duties, as well as Mr. Reina receiving favorable evaluations for the performing of "tasks expected of him," in an effort to fill this evidentiary gap.

The EEOC's reliance upon these facts is misplaced. While Wal-Mart does not dispute that Mr. Reina was allowed to avoid performing all the essential duties of the Cart Attendant position, this does not support a finding of a "modified position" nor bind Wal-Mart to provide this accommodation indefinitely.  Further, for at least Mr. Reina's 2013 and 2014 evaluations, those evaluations were based on what Mr. Reina and his job coach were able to achieve collectively. (*See* Defendants' Reply to EEOC Response to Proposed Facts ¶¶ 100 and 102.)[7] *Significantly, the EEOC concedes that Mr. Reina needed a job coach to do his job. (See Id.* at Facts ¶¶ 58, 61, 92.) *If Mr. Reina would have been rated based solely on his capacities, the accommodation Wal-Mart gave him of a job coach would have been nullified and ineffective.* This does not suggest that Mr. Reina worked in a modified position, but rather that Wal-Mart went beyond what is required of the ADA in accommodating him.

The ADA does not contain a "you broke it, you buy it" provision in relation to accommodations, nor does it grant employees any sort of expectation of permanence over an accommodation that was not required to be granted in the first instance. *See Walton v. Mental Health Ass'n,* 168 F.3d 661, 671 (3rd Cir. 1999); *Magnant v. Panelmatic Tex., Inc.,* No. H-05-0135, 2006 U.S. Dist. LEXIS 59261 at * 43 - 44 (S.D. Tex., August 22, 2006). An unreasonable accommodation does not age into a reasonable one or a new position through the mere passage of time.

For this same reason, past performance evaluations cannot be used to establish that a disabled employee could perform the essential functions of the job. Irrespective of, if and why, a decade ago, a particular manager evaluated Mr. Reina's performance of a task favorably, it would

---

[7] *See* Defendants' Reply to EEOC's Responses to Proposed Findings of Fact ¶¶ 99 and 103, as to the EEOC's baseless argument for excluding the Declarations of Ms. Martin and Ms. Fellows.

be disingenuous and contrary to the intent of the ADA to argue that this demonstrates that Mr. Reina was a qualified individual with a disability. Try as it might to argue otherwise, the EEOC cannot get past the fact that, without an unreasonable accommodation (in this case, the hands-on permanent assistance of a job "coach,") Mr. Reina would have been unable to complete even the most menial and insignificant of tasks, because his many disabling conditions (sub-25 IQ, lack of ability to communicate, vision impairment, deafness) would not have allowed him to do so.

        c.    The EEOC Has Failed to Even Specify What Duties Were Part of Mr. Reina's So-called Modified Position

The EEOC's discussion of Mr. Reina's purported "modified position" is remarkably silent and unspecific as to what exactly this modified position consisted of. There is no detail, with references to the record, of what specific duties belonged to this "modified" Cart Pusher position, what percentage of each workday was taken up by performing each duty, and what accommodation would be provided to Mr. Reina to enable him to perform each duty. This scarcity of detail and factual support is due to the simple fact that Wal-Mart never presented Mr. Reina with any such "modified position." A company as large and sophisticated as Wal-Mart would be expected to have generated documents defining such a position and memorializing Mr. Reina's acceptance of these conditions. However, the EEOC cannot point to a single document or witness to attest to the existence of any such arrangement.

What this lack of detail evidences is that the EEOC's position is utterly unfounded and represents a desperate attempt to stave off summary judgment by creating some sort of issue of fact about what position duties Mr. Reina has to be shown to be able to perform in order to be considered a qualified individual with a disability. There has never been any position other than Cart Attendant for which Wal-Mart hired Mr. Reina. Any discussion of "modified positions" is a distraction from that incontrovertible fact that Mr. Reina could not, and still cannot, perform any

of the duties of that Cart Attendant position without the intensive and hands-on assistance of a full-time job "coach." That is another incontrovertible fact, and the EEOC's claims on behalf of Mr. Reina should therefore be dismissed as a matter of law.

5.     The Undisputed Facts Regarding Julie Repka and Jeff Scheuerell's Actions in the Wake of Unsolicited Information They Received About Mr. Reina and His Job Coach Were Entirely Reasonable and Do Not Raise Any Issue as to Discriminatory Animus

In its brief, the EEOC seeks to create a triable issue of fact out of the fact that Mr. Reina was allowed to work with a full-time job coach with seemingly no problem until Jeff Scheuerell became Store Manager, and he and Market Manager Julie Repka asked Mr. Reina to provide medical evidence of what job functions he could and could not perform. The EEOC's efforts fall well-short of defeating summary judgment, as Mr. Scheuerell's and Ms. Repka's actions were entirely reasonable and justified, and do not reflect any discriminatory *animus* on their part. Much like the fact that unreasonable accommodations granted by managers do not bind the employer in perpetuity, they also do not compel new managers to adopt them.

Current management's – and not past management's – assessment of Mr. Reina is what should be considered by the Court. Mr. Scheuerell started as Store Manager at the store where Mr. Reina worked in or around early June 2015 and almost immediately noticed that Mr. Reina was seemingly incapable, in his view, of performing any job-related tasks without the full assistance of his full-time job coach, Mr. Coppernoll. (Defendants' Reply to EEOC Responses to Proposed Facts at ¶¶ 27, 28.) Mr. Scheuerell had previous first-hand experience working with associates who were assisted by job coaches. (*Id.* at ¶ 49.) However, those job coaches were temporary in nature and only called upon to help train an associate so that he or she could be self-sufficient. (*Id.*)  Mr. Scheuerell had never seen a situation in which an associate required a full-time hands-on job coach in perpetuity and going beyond simply training the associate. (*Id.*)

To the extent that the EEOC proffers that Mr. Reina's working situation was not a problem until Mr. Scheuerell became Store Manager, and that there is an issue of fact about Mr. Scheuerell's potentially discriminatory *animus*, the EEOC could not support this theory. The fact that Mr. Scheuerell sought evidence of if and how Mr. Reina could perform his job is in no way suggestive of discriminatory *animus*. There is no evidence on record that Mr. Scheuerell was in any way focused on Mr. Reina. Quite the opposite is true, in fact. As the EEOC itself states, Mr. Scheuerell's attention was called to the fact that Mr. Reina was working with a full-time job coach who had reportedly turned violent against him. (*Id.* at 21, 25, 26.) Before being informed of this, Mr. Scheuerell had no idea who Mr. Reina even was. (*Id.* at 7.) Finally, there is no evidence that Mr. Scheuerell solicited, in any way, the information on Mr. Reina that he was provided.

Further, it is irrelevant if Mr. Reina's previous managers had allowed him to use a full-time hands-on job coach for everything, or even if they had given him positive evaluations or failed to enforce legitimately-reasonable performance expectations. *See Champagne v. Servistar Corp.*, 138 F.3d 7, 14 (1st Cir. 1998); *Alejandro v. New York City Department of Education,* 2017 U.S. Dist. LEXIS 49555, No. 15-CV-3346(AJN) (S.D. NY March 31, 2017) at *48.[8]

---

[8] The EEOC relies on *Skerski v. Time Warner Co.,* 257 F.3d 273 (3rd Cir. 2001). *Skerski* provides no support for the proposition for which the EEOC cites it. It is also factually distinguishable from the present case. In *Skerski* there was an issue of fact about whether climbing was an essential function, and the employee's inability to climb to install cable was not found to present any adverse consequences for the employer. Mr. Reina, on the other hand, is unable to perform any of the functions of his position without having someone else help him, and this inability presents an obvious adverse consequence for Wal-Mart. If a Cart Attendant cannot perform any of the duties of his position, the customer's experience is likely undermined significantly, which is disastrous for a brick-and-mortar retailer like Wal-Mart.

II.   THE EEOC HAS FAILED TO INTRODUCE SUFFICIENT EVIDENCE TO CREATE A
      TRIABLE ISSUE AS TO MR. REINA'S ALLEGED TERMINATION OR TO SUSTAIN
      ITS BURDEN OF PROOF AS TO THE INTERACTIVE PROCESS CLAIM IN THIS
      MATTER

In its opposition brief, the EEOC argues that Mr. Reina was, for all intents and purposes,

terminated by Wal-Mart on June 12, 2015, because he has not been free to return to work since

that date. The EEOC also argues that Wal-Mart short-circuited and aborted the interactive process

with Mr. Reina and that, as a result, never explored whether Mr. Reina would have been able to

perform his job as a Cart Attendant with an accommodation other than his job coach. In attempting

to get this case in front of a jury, the EEOC claims that it will present evidence showing that Ms.

Slaght "bent over backwards to try to get Wal-Mart to engage in the interactive process with Reina

and her," and that "a jury could conclude [that] Wal-Mart never seriously contemplated engaging

in any sort of dialogue with Reina after nine months of keeping him off the schedule."

The record is remarkably barren of any evidence in support of the EEOC's arguments about

Mr. Reina's purported termination and Wal-Mart's supposed role in "halting" the interactive

process. Initially, the EEOC cannot carry its evidentiary burden for surviving summary judgment

on its ADA termination claim because it cannot identify genuine issues of material fact establishing

that Mr. Reina was terminated because of his disability.[9] The EEOC does not refute or directly

counter Wal-Mart's assertion that Mr. Reina was on leave while it waited on Ms. Slaght to provide

it with more specific information. (*See* Defendants' Reply to EEOC Proposed Facts ¶ 40.) Further,

no matter how much doubt the EEOC might attempt to cast on the facts of the case, there is no

question that, as late as March 2016, Wal-Mart requested additional information about Mr. Reina's

ability to perform essential functions of his job. (Defendants' Reply to EEOC Responses to

---

[9] As discussed at length elsewhere in this Brief, the EEOC cannot establish that Mr. Reina was able to perform the
essential functions of his job with or without reasonable accommodations, which is another prong of the burden it
must satisfy.

Proposed Facts at ¶¶ 149, 150, 151, 152.) This means that he was not terminated on the date in which he was placed on leave/inactive status, as the EEOC argues he was. Significantly, there is no dispute that as of at least December 2017, Mr. Reina was listed as inactive in Wal-Mart's system, meaning that he was still an associate as of at least that time. (*See Id.* ¶¶ 40, 41.) Moreover, and as noted above, the EEOC has not presented anything beyond conjecture to suggest discriminatory animus in connection with Wal-Mart's actions.

The EEOC's argument that Wal-Mart failed to engage in the interactive process as to Mr. Reina's need for an accommodation should also be rejected as a matter of law for all the reasons stated in Wal-Mart's Opening Brief. In a failed attempt to avoid this outcome, the EEOC cites to several cases on this issue, none of which are persuasive. *Bultemayer v. Fort Wayne Community Schools,* 100 F.3d 1281, 1286 (7th Cir. 1996) is distinguishable from this case because in that case the employer never even made any inquiry into the employee's potential need for an accommodation. In the present case, the EEOC itself admits that Wal-Mart did – at least initially – reach out to Mr. Reina and his mother to request information about what functions he could and could not perform. *Battle v. UPS,* 438 F.3d 856, 863 (8th Cir. 2006) and *Valle-Arce v. Puerto Rico Ports Authority,* 651 F.3d 190, 200 (1st Cir. 2011) are cases in which the employees remained engaged in the interactive process throughout the entirety of the process. By contrast, as previously mentioned, Ms. Reina's mother admitted that she did not even bother responding to Wal-Mart's letter which sought additional information as to what Mr. Reina could and could not do.

III.    BASED UPON THE UNDISPUTED FACTS IN THE RECORD, SUMMARY JUDGMENT IS MERITED ON THE EEOC'S PUNITIVE DAMAGES CLAIM

Summary judgment is likewise warranted on the EEOC's punitive damages claim. The EEOC simply cannot meet the stringent burden that courts in our Circuit have set forth for

awarding punitive damages against employers found to have discriminated against their employees.

First of all, while the EEOC argues, as an initial matter, that Wal-Mart did not plead the affirmative defense, and has thus waived it under Fed. Civ. P. 8(c)(1). But even a cursory review of Wal-Mart's Answer to Complaint and Affirmative Defenses reveals otherwise. As its ninth affirmative defense, Wal-Mart states that "Plaintiff is not entitled to any relief or damages, **including punitive damages**, compensatory damages, prejudgment interest, costs, penalties, or attorney's fees." (bold-type and underline added) Moreover, the EEOC cites not even a single case which holds that an employer is required to plead a plaintiff's lack of entitlement to punitive damages as an affirmative defense.

As to the merits of its argument in support of punitive damages, the standard of conduct in which Wal-Mart must be shown to have partaken is beyond merely "being wrong" under the applicable law. It must be purposeful and malicious. This standard of conduct does not depend "on the egregiousness of the Defendants' misconduct, or its callousness in denying reasonable accommodation, but instead run from a culpable state of mind regarding whether that denial of accommodation violates federal law." *Gile v. United Airlines, Inc.,* 213 F.3d at 375 (7th Cir. 2000), *citing Kolstad v. American Dental Association*, 527 U.S. 526, 536 (1999).

The EEOC alleges that Wal-Mart denied Mr. Reina a reasonable accommodation to which he was entitled. Naturally, Wal-Mart disagrees with this contention, but even if the EEOC were right, rejection of a requested accommodation does not, by itself, suggest that the employer knew its conduct may be in violation of the law or acted with malice or reckless disregard of the law. *Tobin v. Liberty Mutual Insurance,* 553 F.3d 121, 149 (1st Cir. 2009). Merely saying that Wal-Mart's conduct in how it dealt with Mr. Reina was malicious does not make it so. The EEOC has

29

to come forward with evidence that Wal-Mart's purported violations of the ADA were purposeful and malicious, or else it will not be entitled to punitive damages. As it cannot carry this burden, summary judgment should be granted against the EEOC and in Wal-Mart's favor with regard to any claim for punitive damages.

## CONCLUSION

Mr. Reina's job coaches were not a temporary or stopgap measure implemented to train Mr. Reina to gain enough independence to be able to work alone. Instead, Mr. Reina's job coaches ultimately either assisted Mr. Reina in performing his job duties or actually performed some duties. This is crystal-clear in the record. Mr. Reina's long-term and most-recent job coach himself testified under oath that Mr. Reina could not steer the store's shopping carts, could not operate the Cart Caddy cart retrieval equipment with which he would have been able to steer a large number of carts at once, and could not be taught to use the Cart Caddy. (Defendants' Reply to EEOC Responses to Proposed Facts at ¶¶ 112, 113, 114.) It is similarly undisputed that Mr. Reina received permanent assistance in performing customer-related tasks, such as responding to customer inquiries. (*Id.* at ¶¶ 117, 118, 133, 138, 144.)  According to Mr. Reina's own doctor, he has an IQ of below 25, which makes him severely mentally retarded, and is non-communicative in a way that cannot be understood by most people, which became apparent when he was not even able to be deposed, in spite of the fact that Wal-Mart had two certified sign language interpreters and two deaf interpreters present. (*Id.* at ¶¶ 74, 75, 76, 77, 78.) This is why Mr. Reina depended on a full-time and hands-on "job coach" to complete virtually all of the functions of the Cart Attendant position. Accommodating Mr. Reina in such a way is not reasonable, as a matter of law.

For all the reasons stated herein and in Wal-Mart's Opening Brief, Wal-Mart requests that this Court grant the instant Motion for Summary Judgment as to all of Plaintiff's claims.

Dated this 22nd day of October, 2018.

MWH Law Group LLP

By: */s/Warren E. Buliox*

Emery K. Harlan
State Bar No. 1000240
Warren E. Buliox
State Bar No. 1056215
Carlos R. Pastrana
State Bar No. 1088286
735 N. Water Street, Suite 610
Milwaukee, WI 53202
(414) 436-0353 Phone
(414) 436-0354 Facsimile
emery.harlan@mwhlawgroup.com
warren.buliox@mwhlawgroup.com
carlos.pastrana@mwhlawgroup.com

**COUNSEL FOR DEFENDANTS' WAL-MART STORES, INC. AND
WAL-MART STORES EAST, LP**