IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| | ) | Civil No. 3:17-cv-00739-jdp |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| WAL-MART STORES, INC. and WAL-MART STORES EAST, L.P., | ) ) ) | **EEOC'S REPLY MEMORANDUM IN SUPPORT** |
| Defendants. | ) ) ) ) | **OF ENTRY OF AN AWARD OF EQUITABLE RELIEF** |

## I.    INTRODUCTION

Walmart's objections to the EEOC's request for monetary and injunctive relief are unavailing.  Walmart fails to carry its burden of showing that Reina did not mitigate his damages, and that injunctive relief should not issue here. In addition, Walmart's remaining arguments seeking to limit the equitable relief sought by the EEOC are without basis in the law of this Circuit and contrary to the trial testimony and the jury's verdict.

## II.    ARGUMENT

### A. **The EEOC's back-pay claim is appropriate and verifiable.**

#### 1. **Walmart fails to establish its mitigation defense.**

To sustain its mitigation defense, Walmart must show that there were comparable positions available to Reina for which he did not apply.

1

S*tragapede v. City of Evanston, Illinois*, 865 F.3d 861, 869 (7th Cir. 2017), *as amended* (Aug. 8, 2017).  Walmart has failed to show the availability of a single comparable job for which Reina should have applied and was reasonably likely to secure.

Walmart bases its assertion that comparable jobs were open for Reina on data from the Bureau of Labor Statistics.  However, these statistics show the number of persons employed; they **do not** show job openings.  The Bureau of Labor Statistics' website explicitly states that its occupational employment statistics show nothing about vacancies, noting that "[t]he OES survey does not ask establishments for vacancy information."

https://www.bls.gov/oes/oes_ques.htm, at Question C(4).  *See also* https://www.bls.gov/oes/oes_ques.htm, at Question C(3) ("Does OES have any data on unemployment for specific occupations?" "No. The OES survey is an occupational employment and wage survey only.").  Walmart's assertion that Reina "applied for less than 1% of the jobs in his market," therefore, is fallacious.  (*See* DKT 217, at 8).  These jobs were not available but were already filled by another worker.

Walmart also fails to narrow its data so that it is meaningful in any way.  *NLRB v. Midwestern Personnel Services, Inc*., 508 F.3d 418, 427 (7th Cir. 2007) (affirming exclusion of expert testimony on mitigation where the data had an overbroad geographic scope and did not include information

about the applicant pool, or the hours, wages, and locations of the supposedly available positions, or whether aggrieved individuals would have gotten the positions if they applied); *Smith v. Rosebud Farmstand*, No. 11-cv-9147, 2016 WL 5912886, at *20 (N.D. Ill. Oct. 11, 2016) (holding that expert report relying on generalized labor market data was useless because it said very little about whether the plaintiff had a legitimate opportunity to secure those jobs had he applied).  Walmart's statistics do not reflect whether the positions were part time or full time.  (DKT 41, at 303:2-11) (Reina could not work full time).  It does not include whether any of these jobs would pay Reina anywhere near $12.45 an hour, or whether the employer would have adjusted Reina's wage to reflect the 16-plus years of experience that Reina had doing his job in Walmart. (*See* DKT 216, at ¶ 13).  The data is not confined to the Beloit, WI, and South Beloit, IL, area.  There was no testimony that Reina, who does not drive, ever worked outside that area or could obtain reliable transportation for a job that required commuting farther distances.

In addition, Walmart cannot show that Reina did not actively pursue alternate employment.  Walmart itself notes that Reina submitted about twelve applications before obtaining his newspaper job.  (DKT 217, at 4).  He and his job coach also looked through the want ads.  (*Id.*)  Reina's efforts to get a part-time job pushing shopping carts were unsuccessful.  *Ford Motor Co. v. EEOC*, 458 U.S. 219, 221 (1982) ("The extended time it frequently

takes to obtain satisfaction in the courts may force a discrimination claimant to suffer through years of underemployment or unemployment before being awarded the job claimant deserves.").

Reina ultimately obtained alternative employment delivering newspapers and building birdhouses.[1]  Reina's work with CSI Media LLC and his sale of birdhouses were reasonable methods of mitigating damages.  *Carden v. Westinghouse Electric Corp.*, 85- F.2d 996 (3rd Cir. 1988) (holding that the employer failed to show that plaintiff's choice to enter into his own business was not a reasonable method of mitigating damages after the employee had looked for work unsuccessfully for nearly a year).  It is particularly clear that Reina's alternative employment was reasonable when Walmart cannot show any vacancy for a comparable job which Reina unreasonably failed to pursue.

### 2.  The EEOC's back pay period is reasonable.

Walmart continues to try to relitigate the issue of its termination of Paul Reina.  It argues that Reina's employment "clearly" had not been terminated as of March 25, 2016, when it sent its lawyer-drafted letter that requested the very information that Slaght had provided on July 9, 2015. (DKT 217, at 8-9).  It proposes "as a compromise" that the back-pay period

---

[1] While Walmart infers from a statement in the EEOC's brief that Reina stopped his job search upon starting work for CSI Media LLC, (DKT 217, at 6-7), it cites to no record evidence to support its contention.

4

start on March 18, 2016, when Walmart told Slaght that Reina would never work at Walmart again.  (*Id*. at 9).

The jury ruled in the EEOC's favor on its claim that "Walmart terminated Reina based on his disability when it suspended him and did not schedule him for further work hours."  (Prelim. Jury Instr., DKT 195, at 2).  Walmart ended Reina's work on June 12, 2015, when he was suspended.  Reina did receive two weeks' vacation pay after that time, though, so the EEOC elected to request back pay from July 9, 2015, which is the day that Rose Slaght returned the requested accommodation form to Jeff Scheuerell, who told her, "Don't call us.  We'll call you."  (DKT 214, at n.1).  By that date, Walmart had suspended Reina and did not schedule him for further hours, thus effectively terminating him.

### 3. The EEOC's calculation of Reina's monthly wage is substantiated and supportable.

Walmart objects to the EEOC's proposal that the Court should use Reina's average monthly earnings in 2014 to calculate the back pay, which were $815.17.  Instead, it proposes that the Court extrapolate from Reina's partial 2015 earning and use $608.92 as a monthly back-pay figure. (ECF 217, at 9-10).

There are a multitude of problems with Walmart's calculations.  As an initial matter, the EEOC cannot replicate them.  Using Reina's biweekly total

earnings in 2015, averaging them out, and then extrapolating them to a full year results in annual earnings of $7940.40, not $7307.04, as asserted by Walmart, and in a monthly calculation of $661.70, not $608.92.  (Vance Supp. Decl., ¶ 2).  Walmart's calculations are wholly unreliable and should be disregarded.

In addition, the wage forms relied upon by Walmart reflect that Reina's earning varied a great deal from pay period to pay period, ranging from $239.34 to $380.52.  (DKT 218-10).  The wage forms also do not include the busy shopping period between Thanksgiving and Christmas.  They are an incomplete and potentially misleading picture.

Absolute certainty in back pay calculations is unnecessary. *Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290, 1299 (7th Cir. 1987).  Here, the EEOC proposed a very conservative and fully verifiable calculation using the average monthly wage during Reina's last full year of employment.  The EEOC could have been more aggressive; it could have based its damages on Reina's last full pay period worked in 2015, in which he was paid $380.52 and would have had earnings higher than what the EEOC is seeking, (DKT 218-10), or it could have incorporated annual raises for Reina of $0.40 an hour, because he had obtained them in the past.  (DKT 216-12 and ¶13).  It did not. Its reasonable and supported claim for back pay should be adopted.

## B. The EEOC's front-pay claim is reasonable under the circumstances of this case.

The EEOC seeks 10 years of front pay, reduced to present day value. Walmart contends that Reina should be denied front pay entirely because Reina purportedly failed to mitigate his damages. As discussed earlier in this memorandum, however, Reina did mitigate his damages, obtaining alternative employment. Moreover, Reina's skills are not readily transferable to other employment, and there is no evidence that there is some unidentified vacant comparable job out there for him – one that was a part-time job, located in Beloit or South Beloit, paying a comparable wage (which would now be $14.45 an hour if Reina had received annual raises of $0.40 at his yearly performance evaluations in 2015 through 2019), and where Reina could do the essential functions of the position with the reasonable accommodation of a job coach.

The cases cited by Walmart are inapplicable here. In *Biondo v. City of Chicago, Ill*, 382 F.3d 680, 691 (7th Cir. 2004), the plaintiffs contended that their promotions were delayed because of the City gave preference to minority candidates. The Seventh Circuit held that front pay should stop as of the date when the plaintiffs could seek promotion again without the impediment of the discriminatory preference. In *Stragapede v. City of Evanston*, 125 F. Supp. 3d 818, 833 (N.D. Ill. 2015), the plaintiff stopped

looking for work over two years before the jury verdict and had failed to discount his front-pay claim to reflect present day value.  Neither of those elements is present here: Reina got an alternative job and the EEOC reduced its front-pay request to its present-day value.

The EEOC's request for 10 years of front pay also is not speculative or unsupported.  Reina had worked at Walmart for almost 17 years and was expected to continue working there.  He was buying a house, which depended on him continuing to earn his wage at Walmart.  His future was mapped out for him, with the notion that he could live independently of his foster family. There was no contemplation that Reina was going to voluntarily leave his employment at Walmart.  (DKT 214, at 8-9).

Here, again, the cases cited by Reina are inapplicable.  In *Ward v. Tipton Cty. Sheriff Dep't*, 937 F. Supp. 791, 799 (S.D. Ind. 1996), the district court restricted the front-pay award because there was evidence that the plaintiff had not applied to available positions that were similar in status, pay, hours and promotional opportunities to the position for which she was seeking front pay.  In *McKnight v. Gen. Motors Corp.*, 973 F.2d 1366, 1372 (7th Cir. 1992), the plaintiff's front-pay claim was inconsistent with his trial testimony recounting that his jobs after discharge paid more, and he had declined to submit additional evidence to the court supporting the front-pay claim.  The remaining cases cited by Walmart all concern its repeated and

8

unsupported claim that Reina was not been diligent enough in trying to obtain alternative employment.

Front pay compensates an employee who is unable to return to the employment lost through discrimination. The cases cited in the EEOC's moving brief support front pay of ten years here. (DKT 214, at 8-9). Reina has found alternative employment after applying and being rejected at places like Piggly Wiggly, Woodman's and the Dollar Store. Walmart could identify no job opening during the back-pay period that was comparable, including hours, geography, pay, and working conditions, and for which Reina did not apply. There is no reason to believe that this fact has or will change in the coming years. Reina should be awarded the requested ten years of front pay reduced to present day value.

## C. Prejudgment interest should not be limited.

Walmart asserts that this Court should decline to award prejudgment interest during the two-year period that the charge was being investigated by the EEOC. The case upon which Walmart relies, *Martyne v. Parkside Medical Services,* No. 97 C 8295, 2000 WL 748096 (N.D. Ill. June 11, 2000), was firmly rejected by another court in the district. There, the district court noted:

> The Court does not agree that Ortega should be denied prejudgment interest based on the fact that she could have filed this lawsuit and served the Board earlier than she did. The definition of "delay" is "the

act of postponing, hindering, or causing something to occur more slowly than normal." *https://www.merriam-webster.com/dictionary/delay*. The Board does not contend that Ortega filed her lawsuit or served the Board outside the time periods permitted by the applicable rules. Congress already has set forth what it believes is a reasonable time for filing suit and serving a complaint, and Ortega did those things within those deadlines. By definition, therefore, she did not do anything slower "than normal." To impose some other, shorter timeline would be arbitrary and create unnecessary uncertainty, as well as penalize employment discrimination plaintiffs for exercising procedural rights to which they are entitled under the discrimination statutes and federal rules of civil procedure.

*Ortega v. Chicago Bd. of Educ.*, 280 F. Supp. 3d 1072, 1096 (N.D. Ill. 2017),

*appeal dismissed*, No. 17-3542, 2017 WL 9538121 (7th Cir. Dec. 18, 2017).

Just as in *Ortega*, Walmart makes no allegation that Reina or his guardian somehow violated a deadline or other timeline, which thereby might require Reina to be punished by the denial of a remedy to which he would otherwise be entitled.  Furthermore, the EEOC is the party who brought this suit, not Reina.  There is no argument by Walmart that the EEOC somehow unreasonably delayed its action, or that laches or some other equitable limitation should apply to it.  Indeed, Walmart had the ability to end this litigation before it began by engaging in conciliation discussions with the EEOC, a prerequisite to suit that it admits was satisfied.  (*See* DKT 19, at ¶1) (admitting that all conditions precedent have been satisfied).

### D. A tax component award should be granted.

Relying on case law from other circuits, Walmart contends that a tax gross-up should not be awarded because "[t]here are no such special circumstances in this case." (DKT 217, at 16-17). The Seventh Circuit does not require special circumstances, however. It holds that a tax component award should be included as part of the make-whole relief to which a prevailing plaintiff is entitled.

> Miller will be bumped into a higher tax bracket. The resulting tax increase, which would not have occurred had he received the pay on a regular, scheduled basis, will then decrease the sum total he should have received had he not been unlawfully terminated by Hospitality. Put simply, without the tax-component award, he will not be made whole, a result that offends Title VII's remedial scheme.

*EEOC v. N. Star Hosp., Inc.*, 777 F.3d 898, 904 (7th Cir. 2015).

Walmart also argues that *Northern Star Hospitality* applies only to lump-sum back-pay awards. That contention is also incorrect. The issue of front pay was not even before the Court of Appeals. The district court had denied the claim for front pay. *EEOC v. N. Star Hosp.*, No. 12-CV-214-BBC, 2014 WL 282026, at *4 (W.D. Wis. Jan. 27, 2014), *aff'd sub nom. EEOC v. N. Star Hosp., Inc.*, 777 F.3d 898 (7th Cir. 2015).

The Court of Appeals' reasoning in *Northern Star Hospitality* still applies to front-pay awards though; Reina's front-pay award will result in a "tax increase, which would not have occurred had he received the pay on a

regular, scheduled basis, [which] will then decrease the sum total he should have received had he not been unlawfully terminated." *N. Star Hosp., Inc.*, 777 F.3d at 904.  Without an award for tax consequences on the back-pay and front-pay claims, Reina will not be made whole, "a result that offends Title VII's remedial scheme." *Id.*

**E. The EEOC's request for injunctive relief is narrowly drawn and appropriate under the facts of this case.**

  1. **Walmart has not proven that injunctive relief is inappropriate here**.

Walmart bears the burden of establishing that injunctive relief is unnecessary. *EEOC v. Ilona of Hungary, Inc.,* 108 F.3d 1569, 1579 (7th Cir. 1997).  Walmart argues that an injunction is unnecessary because (1) Jeff Scheuerell no longer works for Walmart, and there purportedly is no evidence that others in the Beloit store harbor a discriminatory animus against persons with disabilities; (2) the Beloit store has not been sued again in the Western District since Reina was terminated; and (3) Walmart has robust policies covering ADA issues.

None of these factors are sufficient to establish that there is no reasonable probability of further noncompliance with the law.  Walmart employed Scheuerell through the trial and never criticized him for his actions or his failure to follow its policies.  (*See* DKT 203, at 3-A-108:25 – 109:13).  The fact that he is now gone does not remove the specter of approval that Walmart

12

gave him.  *EEOC v. AutoZone, Inc.*, 707 F.3d 824, 844 (7th Cir. 2013) (holding that passage of time and changes in management personnel do not guarantee the enforcement of employer's anti-discrimination procedures).  Walmart still employs Julie Repka, (DKT 208, at 3-P-17:15 – 18:23), who failed to follow Walmart's policies or fulfill her role as the human resources manager in preventing employment discrimination.  (DKT 189, at 141:25-152:20, 153:16-22, 154:24-157:8, 160:9-161:8, 161:20-25, 162:19-166:16).  Walmart also still employs other managers who testified at trial and were complicit in the discriminatory conduct towards Reina.  For example, Sheila Rae Martin is currently the assistant store manager in Beloit.  (DKT 203, at 3-A-46:25 – 47:3).  She testified that she did not tell Reina how he could improve his performance because she did not believe that he would have understood that direction based on his disabilities.  (*Id*. at 3-A-62:24 – 63:15).

In addition, Walmart's statements to the press show that it continues to believe that it did nothing wrong, and it is eager to express that to the public and its employees.  Walmart's spokesperson immediately challenged the jury's findings, stating that "because Reina is unable to perform the essential functions of the job with or without accommodations, he would not be eligible for rehire."  (DKT 216-6, at 5).  He further cast aspersions on the position that the EEOC took in settlement discussions, saying that the EEOC had inappropriately refused to agree to a "no reapplication" provision, which he

asserted could result in the EEOC suing them again if Walmart did not rehire Reina.  (*Id.*)

This hostility to Reina and this case thus runs all the way up the ladder. The fact that Walmart has not been sued again in the Western District because of actions in Beloit is not enough to satisfy that there is no probability that discrimination might reoccur.  Indeed, it is undisputable that Walmart has many lawsuits pending against it for employment discrimination, including two currently pending in the Western District of Wisconsin and one currently pending in the Eastern District of Wisconsin. *See EEOC v. Walmart Stores East, LP and Walmart, Inc.,* Civil Action No. 3:18-cv-804 (W.D. Wis.); *EEOC v. Wal-Mart Stores East, LP, D/B/A Wal-Mart Distribution Center # 6025*, Civil Action No. 3:18-cv-783 (W.D. Wis.); *EEOC v. Wal-Mart Stores East, LP*, Civil Action No. 2:17-cv-70 (E.D. Wis.).

Walmart's policies hardly insulate it.  Policies are only meaningful if they are followed and enforced.  However, the testimony at trial showed that Walmart's policies were not followed in virtually every instance and at every level of Walmart.  (*See* DKT 214, at 12) (citing to trial testimony on failure to follow Walmart policies).  *AutoZone*, 707 F.3d at 844 (affirming injunction where Shepherd's requests for an accommodation were left unresolved because of a systemic failure to properly implement AutoZone's established procedures).

14

### 2. The Court should order injunctive relief relating to reasonable accommodations of persons needing a job coach or aide.

Walmart objects that there is no geographic limit to the EEOC's requested injunction relating to persons with developmental or cognitive disabilities. Walmart cannot show, however, that the possibility of it violating the law does not extend nationwide.  Walmart itself asserted that its accommodation process is centralized in its Accommodation Service Center, (DKT 203, at 3-A-84:14 – 85:4; *see* DKT 217, at 19, 25), and this is the very entity that failed to follow its internal policies.  (DKT 190, at 83:10-84:7, 84:13-16, 94:12-98:1). Furthermore, Walmart has never indicated who made the decision to suspend Reina without pay, simply indicating that someone in Walmart directed Scheuerell to take Reina off the schedule.  (DKT 203, at 3-A-96:6-15).  Given that Scheuerell was the store manager, the direction thus emanated from someone higher up, presumably in Walmart's headquarters.

Moreover, the requested injunction is drawn to specifically address issues relating to employees and applicants with developmental disabilities or cognitive disabilities that affect mental functioning.  The Seventh Circuit has endorsed much broader injunctions, *see, e.g., Ilona of Hungary*, 108 F.3d at 1578-59 (affirming injunction against future religious discrimination against Jewish employees), and Walmart has itself agreed to them in Consent Decrees.  *See, e.g., EEOC v. Walmart Stores, Inc.*, Civ. No. 15-cv-5796, at

DKT 46 (N.D. Ill., Dec. 6, 2016), *attached to* Vance Supp. Decl., Ex. 2 at 2 (entering nationwide injunction in a case alleging that Walmart failed to provide reasonable accommodation, and enjoining Walmart from engaging in any employment practice prohibited by the ADA).

Walmart asserts that the EEOC's request for an injunction requiring that Walmart consider the provision of a job coach or aide as a reasonable accommodation requires Walmart to do more than the law does. (DKT 217, at 21-22). The injunction, however, is fully consistent with the law of the Seventh Circuit, which was discussed at length in the Court's decision denying Walmart's motion for summary judgment. (DKT 65, at 16-20). It also is necessary to carry out the jury verdict, which found that Walmart had failed to provide Reina with a reasonable accommodation. (DKT 197). Walmart's argument that the Court and the jury got it wrong is the basis for an appeal, not for denying the requested injunction.[2]

Walmart's assertion that the injunction should not bar it from discriminating against applicants because the suit involved an employee is likewise baseless. Walmart endorsed arguments in this case that go beyond one employee, and certainly left open the possibility that it might

---

[2] The same holds for Walmart's argument that the Court should incorporate in the injunction a definition of "job coach" and a statement that the job coach is not required to do any essential functions. (DKT 217 at n.7). These are not clarifications but are legal definitions and arguments for the Seventh Circuit.

discriminate against applicants as well as current employees in the future. As Seventh Circuit holds, "the EEOC need not prove that the employer previously engaged in widespread discrimination, and 'injunctive relief is appropriate even where the [EEOC] has produced no evidence of discrimination going beyond the particular claimant's case.'" *AutoZone*, 707 F.3d at 840 (quoting *Ilona of Hungary,* 108 F.3d at 1578).

The need for an injunction requiring that Walmart involve the representative of an employee or applicant with cognitive disabilities in employment related discussions is also supported by the evidence here. Walmart's representatives testified to perceived problems with Reina's performance, but they never communicated them to Reina or his job coach. *(See* DKT 214, at 12) (citing to trial testimony).  The evidence also showed that Matt Matheny, the ARC representative, repeatedly tried to contact Scheuerell about getting Reina back to work, but Walmart never responded. (DKT 202, at 2-A-100:5 – 102:25).  Rose Slaght, in turn, filed an online complaint with Walmart, but Walmart never responded. (DKT 205, at 2-P-47:16 – 48:19).

Finally, despite Walmart's assertions, there is nothing in the requested injunctive relief that is contrary to law.  Walmart's reliance on *Basith v. Cook Cty.*, 241 F.3d 919 (7th Cir. 2001), is misplaced.  In *Basith*, the Court affirmed summary judgment for the employer.  The case has nothing to do

17

with the appropriate scope of injunctive relief when the plaintiff prevails on the claims.

### 3. Injunctive relief relating to Walmart's policies is needed to reduce the possibility of future discrimination.

Walmart asserts that the EEOC's requested injunction relating to assuring compliance with Walmart's policies is geographically and substantively overbroad.  It contends that its disability-related policies are not the law.  It asserts that it is inequitable to require "tens of thousands of Walmart associates to strictly follow steps in policies that go above what the law requires." (DKT 217, at 24).

Walmart is being disingenuous.  It currently is subject to a nationwide injunction that obligates it to follow its reasonable accommodation policies. Under the Consent Decree in *EEOC v. Walmart Stores, Inc. and Walmart Stores East, LP*, 18-cv-00170-JDL (D. Maine), entered by the district court on November 13, 2019, Walmart is enjoined from failing to offer to reassign a qualified individual with a disability to a vacant position in violation of Title I of the ADA.  (*Id.*, DKT 69, at ¶11) (*attached to* Vance Supp. Decl. at Ex. 3). Importantly, the Decree further contains the following injunction: "Except as expressly modified herein, Walmart shall manage all aspects of the reasonable accommodation process, including the reassignment search, in accordance with its Accommodation in Employment – (Medical-Related)

Policy and related Accommodation in Employment (Medical-Related) Management Guidelines." (*Id*. at n.2).

This case shows that just having purportedly good policies is not enough though. *AutoZone*, 707 F.3d at 844. That is why the EEOC seeks injunctive relief that will require Walmart to monitor its responsible employees' adherence to these policies. The log kept by the Accommodations Service Center is certainly not enough: it did not prevent the systemic failure of Walmart managers here to follow its policies on every level – both at the store and in corporate. Walmart further took no steps to assure its policies were being followed. The managers who failed to follow the policies in this case testified that they were never criticized or negatively evaluated for their failures. (DKT 203, at 3-A-108:25 – 109:13; DKT 208, at 3-P-40:23 – 41:15). Judging on its public declarations about the merits of this case, Walmart also has not shown any commitment to correcting its procedures to prevent similar problems in the future. *See EEOC v. CEC Entm't, Inc.*, No. 98-C-698-X, 2000 WL 1339288, at *27 (W.D. Wis. Mar. 14, 2000) (narrowing injunctive relief where, among other things, defendant "committed to correcting its procedures to prevent similar problems in the future").

Given that Walmart is already required to follow its reasonable accommodations policies, and Walmart itself asserts that the EEOC's requested relief duplicates some of its existing internal policies, (DKT 217, at

24), the requested injunction is neither burdensome nor overbroad.
Walmart's managers failed to follow its policies and faced no consequences.
The requested injunction is designed to stop that from occurring again.

### 4. Walmart should be required to provide live training to its managers regarding reasonable accommodations.

Walmart resists providing live training to those stores located in Market
263.  Contrary to Walmart's assertion, this geographic area is narrowly
drawn to include only those stores which are in Julie Repka's district.  Given
that Repka was the market human resources manager, and she failed in her
responsibility to assure that the law against disability discrimination was
followed, this scope is appropriate.  Moreover, contrary to Walmart's
contention, its current process of issuing short computer training modules is
demonstrably not sufficient.

The EEOC specifies that the training be introduced by a member of
management because research shows that the most effective training on
discrimination is supported at the highest levels.  Thus, the EEOC's task
force report on sexual harassment, which looked at effective training
programs, stated as follows:

> As noted previously, employees must believe that the leadership is
> serious about preventing harassment in the workplace. Training alone
> is not sufficient to establish the credibility of the leadership in this
> regard - but compliance training provides a moment at which the focus
> is on achieving this goal and thus, leadership should take advantage of

20

that moment. *The strongest expression of support is for a senior leader to open the training session and attend the entire training session.*

EEOC, *Select Task Force on the Study of Harassment in the Workplace*, at 52 (June 2016) (attached to Vance Supp. Decl., Ex. 1, at 52), *available at* https://www.eeoc.gov/eeoc/task_force/harassment/report.cfm#_Toc453686310 (emphasis added).  The Task Force Report also concluded that "[l]ive trainers who are dynamic, engaging, and have full command of the subject matter are the most likely to deliver effective training." *Id.*

### 5. The EEOC's proposed terms relating to compliance are reasonable and narrowly drawn.

The EEOC proposes that the injunction last three years.  This is an accepted length of time for injunctions in this Circuit.  *AutoZone*, 707 F.3d at 840-44 (affirming injunctive relief that required reporting and recordkeeping for three years, and remanding provision that did not have such a temporal limitation); *N. Star Hosp.*, 2014 WL 282026, at *5 (granting injunction where "it would last for only three years, so it escapes the criticism that rightfully attaches to injunctions of unlimited length").  Walmart does not carry its burden of showing why the injunction should be limited to one year.

 Walmart also argues that the EEOC should not be permitted to seek relief from the Court unless the EEOC can show "substantial noncompliance." (DKT 217, at 30).  The law already provides a standard that

the EEOC must meet to show contempt based on violation of a court order. There is no need to engraft another standard, particularly one as ambiguous as "substantial noncompliance," to the already high burden. It will just serve to inject uncertainty into a process that is already well defined in the case law.

It additionally asks for 30 days to respond to any notice of noncompliance by the EEOC. The ten-day period proposed by the EEOC is in line with the case law. *EEOC v. Gurnee Inn Corp.*, No. 87 C 0888, 1988 WL 129329, at *2 (N.D. Ill. Nov. 28, 1988), (providing for five days notice), *aff'd*, 914 F.2d 815 (7th Cir. 1990).

## III.  CONCLUSION

Walmart fails to carry its burden of showing that Reina failed to mitigate his damages, or that injunctive relief is unnecessary. Its other objections to the requested monetary and injunctive relief are without support in the facts or the law. The EEOC requests that the Court enter the relief requested by the EEOC in its Motion for Entry of an Award of Equitable Relief.

Dated:  December 18, 2019          By   s/ Laurie Vasichek

Laurie A. Vasichek (Minn. No. 171438)
EEOC - Minneapolis Area Office
330 South Second Avenue, Suite 720
Minneapolis, MN  55401
Telephone:  (612) 552-7315
Facsimile:  (612) 335-4044
laurie.vasichek@eeoc.gov

  s/ Carrie Vance
Carrie Vance (Wis. No. 1056606)
EEOC -Milwaukee Area Office
310 W. Wisconsin Avenue # 800
Milwaukee, WI  53203-2292
Telephone:   (414) 662-3686
Facsimile:  (414) 297-3146
carrie.vance@eeoc.gov