

CERTIFIED COPY

In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 20-3473 & 21-1124

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
                      *Plaintiff-Appellee/Cross-Appellant*,

*v.*

WAL-MART STORES, INC. and WAL-MART STORES EAST, L.P.,
                      *Defendants-Appellants/Cross-Appellees*.

Appeals from the United States District Court for the
Western District of Wisconsin.
No. 3:17-cv-739 — **James D. Peterson**, *Chief Judge*.

ARGUED SEPTEMBER 24, 2021 — DECIDED JUNE 30, 2022

Before EASTERBROOK, ROVNER, and KIRSCH, *Circuit Judges*.

KIRSCH, *Circuit Judge*. After Walmart ended its employment of Cart Attendant Paul Reina, a jury found that Walmart violated the Americans with Disabilities Act by refusing him a reasonable accommodation in the form of a full-time job coach. The jury also concluded that Walmart acted maliciously or in reckless disregard of Reina's rights and awarded Reina $200,000 in compensatory damages and $5,000,000 in punitive damages. In entering the judgment, the district court

Case: 3:17-cv-00739-jdp   Document #: 256-2   Filed: 08/22/22   Page 2 of 18
Case: 20-3473   Document: 00714055011   Filed: 08/22/2022   Pages: 18

2                                           Nos. 20-3473 & 21-1124

declined to issue an injunction against Walmart proposed by the Equal Employment Opportunity Commission.

Both Walmart and the EEOC appealed. The former seeks judgment as a matter of law or, alternatively, a new trial, while the latter seeks remand to the district court for further proceedings on the injunction. Because the jury had sufficient evidence to find as it did and because the district court did not abuse its discretion, we affirm.

I

Paul Reina worked as a Cart Attendant for Walmart in Beloit, Wisconsin from 1998 to 2015. Walmart describes the "essential functions" of Cart Attendants in its job description:

> Maintains availability of and organizes carts/flatbeds, assists customers with transporting items, loads merchandise into customer vehicles, and properly and safely utilizes cart retrieval equipment.
>
> Provides customer service by acknowledging the customer, identifying customer needs, assisting with purchasing decisions, locating merchandise, resolving customer issues and concerns, and promoting products and services, while maintaining a safe shopping environment.

Reina, in performing this role, was assisted by full-time job coaches paid for by Medicaid. Reina is deaf, legally blind, and experiences anxiety. He communicates via sign language, gestures, and facial expressions. During sixteen years at Walmart, Reina had three job coaches: Roseann Slaght, Reina's foster mother, legal guardian, and caretaker; Matthew

Case: 3:17-cv-00739-jdp   Document #: 256-2   Filed: 08/22/22   Page 3 of 18
Case: 20-3473   Document: 00714055011   Filed: 08/22/2022   Pages: 18

Nos. 20-3473 & 21-1124                                              3

Coppernoll, Reina's usual job coach; and Margaret Polizzi, who would substitute for Coppernoll.

In 2015, this arrangement changed with the arrival of Jeff Scheuerell, the store's new manager. In June of that year, shift manager Leah Wampole Stroh told Scheuerell that Reina and his job coach Coppernoll were fighting in the parking lot. Stroh did not witness the alleged incident, and no one called the police or reviewed what had happened. Scheuerell decided to observe Reina at work. He then informed Slaght and Coppernoll that he was concerned that Coppernoll was doing 90-95% of Reina's job. Scheuerell suspended Reina and told Slaght to fill out paperwork as if Reina were a newly hired Cart Attendant, including having a physician complete an "Accommodation Medical Questionnaire."

Communication between the parties lapsed for the better part of a year. In March 2016, Walmart sent Reina a letter asking to continue in the interactive process (during which employers and employees must engage in good-faith exploration of potential reasonable accommodations). But by then, Reina and Slaght had filed an administrative charge with the EEOC. The EEOC in turn decided to sue Walmart, alleging Walmart had violated the Americans with Disabilities Act, 42 U.S.C. §§ 12112(a), (b), by refusing to allow Reina to continue to use a job coach and by ending Reina's employment. Walmart moved for summary judgment, asserting that there was no genuine issue of material fact that Reina could not do the essential functions of the Cart Attendant position and that full-time job coaches can never be reasonable accommodations. The district court denied the motion, finding that there were triable issues of fact on the essential functions of Reina's job and how much his job coaches assisted him.

As the case proceeded to trial, the district court overturned the magistrate judge's previous order to bifurcate the liability and damages phases of the trial. The district court reasoned that the efficiency of trying the two together outweighed any potential prejudice to Walmart.

Walmart proposed instructing the jury to decide the questions of which Cart Attendant functions were essential and whether Reina performed those duties. At trial, the district court adopted that recommendation and instructed the jury likewise. The jury was tasked with answering five questions: (1) whether Walmart violated the ADA by failing to provide Reina with a reasonable accommodation; (2) whether Walmart violated the ADA by ending Reina's employment because of his disability; (3) compensatory damages; (4) whether Walmart acted with malice or reckless disregard of Reina's rights under the ADA; and (5) punitive damages. Evidence presented at trial included testimony by Coppernoll, Polizzi, and Slaght and dealt with Reina's capabilities, steering of carts, the extent of the help of the job coaches, Reina's interactions with customers, and the conduct of Walmart in ending Reina's employment. The jury delivered a verdict in the EEOC's favor on all five questions. It awarded Reina $200,000 in compensatory damages and $5,000,000 in punitive damages, although the district court reduced the punitive damages award to $100,000 to satisfy the statutory damages cap.

After the verdict in its favor, the EEOC sought equitable relief in the form of $41,224.07 in backpay, $58,124.53 in frontpay, $4,495.72 in prejudgment interest, $19,097.14 for tax consequences, and a three-year injunction against Walmart under 42 U.S.C. § 12117(a). The district court granted the

Nos. 20-3473 & 21-1124                                                  5

monetary equitable relief but denied the EEOC's injunctive relief. Meanwhile, Walmart renewed its motion for judgment as a matter of law under Fed. R. Civ. P. 50(a) and also moved for a new trial under Fed. R. Civ. P. 59, arguing the district court should have bifurcated the trial. The district court denied both motions. Walmart timely appealed the denial of its motions for judgment and new trial, and the EEOC timely cross-appealed the denial of the injunction.

II

On appeal, Walmart makes three arguments to avoid the jury's verdict. First, it argues it is due judgment as a matter of law because the jury should not have concluded that Reina could perform the essential functions of the Cart Attendant position. Walmart also requests that we adopt a rule that a full-time job coach is never a reasonable accommodation under the ADA. Second, it wants the punitive damages award set aside because the EEOC's theory of liability was novel. Finally, Walmart seeks a new trial on the theory that the district court erred in deciding not to bifurcate the liability and damages portions of the trial.

A

We review a district court's denial of a motion for judgment as a matter of law de novo and ask, as did the district court, if the jury had a legally sufficient evidentiary basis for its verdict. *Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 980 F.3d 1117, 1128 (7th Cir. 2020). In so doing, we construe all evidence in the record and the inferences reasonably drawn from that evidence in favor of the prevailing party—here, the EEOC on all questions. *Id*. at 1129. We've called this a "high burden" for the losing party on appeal. *Id*. Verdict reversal

will be warranted only if no rational jury could have found in the EEOC's favor. *Id*. And we are "particularly careful" in employment discrimination cases not to supplant the jury's view of the weight of the evidence in its verdict or the judge's view of the weight of the evidence in not interfering with the jury's verdict. *Emmel v. Coca-Cola Bottling Co. of Chicago*, 95 F.3d 627, 630 (7th Cir. 1996). An appeal of a jury verdict is not an opportunity for the losing party to try the case anew before three appellate judges. When a jury follows duly given instructions and reasonably finds in one party's favor based on sufficient evidence, we will affirm the verdict.

Walmart challenges the verdict by claiming that Reina could not perform the essential job functions of (1) retrieving, organizing, and managing traditional carts; (2) retrieving, organizing, and managing motorized carts; and (3) providing customer service. But its theory on appeal asks us to reweigh evidence as if this were a jury trial. Rather than come to grips with the evidence presented at trial and evaluated by the jury, Walmart signals that we should determine de novo which Cart Attendant functions were essential and whether Reina was able to perform those functions. At oral argument, Walmart suggested that it, through its job descriptions, should be able to define essential functions of attending carts. Under this theory, whatever Walmart would put in its job descriptions would be essential functions as a matter of ADA law.

But whether certain functions are essential functions of a job under the ADA is an almost quintessential question of fact. The district court concluded as much, finding that "factual questions remain[ed] about both the essential functions of Reina's position and the amount of assistance that Reina

Nos. 20-3473 & 21-1124                                                7

needed to perform those functions." The court reasoned that a reasonable jury could "conclude that the essential function of Reina's position was to collect carts from the parking lot and put them in the bay and that using the cart caddy or interacting with customers were not essential functions of his job." And, per the district court, it was up to the jury to decide the "genuine issues of fact about the extent Reina's job coaches may have provided assistance to Reina and whether they were required to perform certain essential job duties for Reina beyond merely demonstrating proper technique." See *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 534 (7th Cir. 2013) ("To have another employee perform a position's essential function, and to a certain extent perform the job for the employee, is not a reasonable accommodation.").

Walmart agreed. It proposed that the ADA elements inquiries—including which Cart Attendant functions were essential and whether Reina performed those duties—be questions for the jury, and the EEOC approved. The district court's final instructions were:

> In deciding whether a function is essential, you may consider a number of factors, including the reasons the job exists, the number of employees Walmart has to do that kind of work, the degree of specialization that the job requires, Walmart's judgment about what is required, and the consequences of not requiring an employee to satisfy that function.

And:

> A reasonable accommodation may include changing such things as ordinary work rules,

Case: 3:17-cv-00739-jdp   Document #: 256-2   Filed: 08/22/22   Page 8 of 18
Case: 20-3473   Document: 00714055011   Filed: 08/22/2022   Pages: 18

8                                      Nos. 20-3473 & 21-1124

>   facilities, conditions, or schedules, or having someone else perform the nonessential functions of the employee's job. But it is not a reasonable accommodation to require the employer to eliminate or change the essential functions of the job, to have someone else perform the essential functions of the job, or to lower productivity standards.

Therefore, the jury was instructed to decide what were the essential functions of a Walmart Cart Attendant and whether Reina was capable of doing those essential functions. These decisions were squarely within the domain of the jury.

We find there was sufficient evidence for the jury to conclude (1) Reina was able to perform the essential functions of retrieving traditional carts; (2) retrieving motorized carts was not an essential function of the Cart Attendant position; and (3) Reina was able to perform the essential customer service functions of his job.

At trial, everyone agreed that maintaining and organizing traditional carts was the core part of the Cart Attendant's job. Retrieving carts required either pushing and steering carts manually back to the store after gathering them up or gathering up carts and then driving them back to the store with the use of the motorized cart caddy. Coppernoll, Reina's primary job coach, testified that Reina once independently pushed a line of carts while Coppernoll operated the cart caddy alongside him. Coppernoll also stated that Reina "had complete control" over the carts so that Coppernoll had no "physical role in steering the train of carts [Reina] was pushing." Although it was necessary for safety reasons to help Reina steer the carts, Coppernoll testified, Reina could steer the carts

Case: 3:17-cv-00739-jdp    Document #: 256-2    Filed: 08/22/22    Page 9 of 18
Case: 20-3473    Document: 00714055011    Filed: 08/22/2022    Pages: 18

Nos. 20-3473 & 21-1124                                          9

himself, and Coppernoll's assistance was easy and not strenuous. Polizzi, another job coach, testified that Reina would sometimes independently collect carts on one side of the aisle while Polizzi pushed carts on the other. If Reina was pushing the carts, Polizzi could use a single finger to direct the line of carts. Overall, per Polizzi, Reina "was able to do the job with very minimal intervention from me, no hand or anything like that." Walmart argues that Reina was unable to perform the essential functions of a Cart Attendant because he could not steer the carts safely by himself, but a reasonable jury could disagree and, apparently, did. We will not second-guess its weighing of the evidence.

Next is Walmart's theory that Reina could not attend to motorized carts. Walmart assumes that motorized cart retrieval is an essential function and contends repeatedly that it's undisputed Reina could not retrieve the motorized carts on his own. But the jury was not tasked with deciding only whether Reina could retrieve motorized carts. Rather, Walmart agreed to instruct the jury to decide whether retrieving motorized carts was an essential function of being a Cart Attendant. And the jury reasonably could have determined that retrieving motorized carts was not an essential function based on the evidence before it: that motorized carts were abandoned in the parking lot only once or twice a month.

Third, the jury had sufficient evidence to conclude that customer service was not an essential function of the Cart Attendant job. Walmart's job descriptions included the same boilerplate customer-service elements for all employees, who were tasked with providing "customer service by acknowledging the customer, identifying customer needs, assisting with purchasing decisions, locating merchandise, resolving

10                               Nos. 20-3473 & 21-1124

customer issues and concerns, and promoting products and services." A reasonable jury could find that such generalized requirements were not an essential function of being a Cart Attendant. And, even if generalized customer service were an essential function of being a Cart Attendant, there was still sufficient evidence to conclude that Reina performed those duties. Polizzi testified that Reina could point customers in the right direction when they asked for something in the parking lot. Reina regularly helped people load things into their cars and helped elderly customers by collecting their empty carts so that they would not have to walk them back themselves. Customers told Polizzi that seeing Reina work there made them feel proud of Walmart. And Reina's performance evaluations from Walmart praised him for being friendly and courteous. With such a bevy of testimony in front of it, the jury could hardly be unreasonable for concluding Reina was able to perform whatever part of customer service at Walmart that might be essential.

Walmart, in a last-ditch effort to get around the jury verdict, asks us to create a per se rule no other circuit has. As a matter of ADA law, Walmart says, permanent full-time job coaches are never reasonable accommodations. We have only deemed an accommodation per se unreasonable when the accommodation itself creates "an inability to do the job's essential tasks." See *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017); *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 971 (7th Cir. 2020) (a long-term leave of absence was not a reasonable accommodation because "not working is not a means to perform the job's essential functions"). Where an accommodation does not render an employee unable to do a job's essential functions, as was the case for Reina, then the default fact-based case-by-case approach to ADA

claims is appropriate. To be sure, employers need not pay twice for the same work. See *Majors*, 714 F.3d at 534 ("To have another employee perform a position's essential function, and to a certain extent perform the job for the employee, is not a reasonable accommodation."). But neither Reina nor the EEOC asked for Walmart to pay for Reina's job coaches. So we need not decide when, if ever, that would be required as a reasonable accommodation under the ADA. Because the jury had sufficient evidence to find for the EEOC, the district court's denial of Walmart's motion for judgment as a matter of law must be affirmed.

B

In the district court, Walmart contended that it was entitled to judgment as a matter of law under Fed. R. Civ. P. 50 because the EEOC had not proven discriminatory intent and because the EEOC's underlying theory of liability was novel. The district court rejected both propositions, and Walmart now appeals punitive damages on the second theory alone.

Walmart's argument is that punitive damages are categorically unavailable "where the 'underlying theory of discrimination [under the ADA]' is 'novel or otherwise poorly recognized.'" *EEOC v. Flambeau, Inc.*, 846 F.3d 941, 947 (7th Cir. 2017) (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536–37 (1999). In *Flambeau*, we held that it was a "novel" theory of discrimination by the EEOC to assume that the ADA's insurance safe harbor did not cover certain wellness plans. *Id*. Because Flambeau had no notice that it could be liable under the ADA based on such a theory, its actions were "inconsistent with reckless indifference." *Id*. at 947–48. Therefore, punitive damages were unavailable. *Id*.

Case: 3:17-cv-00739-jdp   Document #: 256-2   Filed: 08/22/22   Page 12 of 18
Case: 20-3473   Document: 00714055011   Filed: 08/22/2022   Pages: 18

12                                  Nos. 20-3473 & 21-1124

But *Flambeau* does not apply to the present case. The EEOC's theory is that Walmart violated the ADA by not permitting Reina to use a job coach as a reasonable accommodation. That is by no means "novel." As established above, the inquiry for whether a job coach is reasonable depends upon whether the job coach, instead of the disabled employee, performs the essential functions of the job. See *Majors*, 714 F.3d at 534; see also *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 141–42 (2d Cir. 1995) (holding that a permanent aide could be a reasonable accommodation if not performing the essential functions of the position). Because our case law bases the definition of reasonable accommodation on the circumstance-specific question of essential functions, Walmart was on notice that a jury could find a full-time job coach to be a reasonable accommodation for Reina if he or she did not perform the essential functions of Reina's job. Contrary to what Walmart argues, it's not an open question whether a permanent job coach can be a reasonable accommodation. Because there was no novel theory of liability, Walmart cannot claim protection from punitive damages under *Flambeau*.

C

Walmart sought a new trial under Fed. R. Civ. P. 59 based on the district court's decision not to bifurcate the liability and damages phases of the trial. Walmart's sole argument is that the emotional testimony at trial proved the district court's prediction incorrect that the evidence related to damages would not be highly prejudicial to Walmart during the liability phase of the trial. Walmart argues that the district court abused its discretion by not acknowledging "the inevitability of human nature to want to protect Mr. Reina from suffering."

We review a district court's denial of a motion for new trial under Fed. R. Civ. P. 59(a) for an abuse of discretion. *Abellan v. Lavelo Prop. Mgmt., LLC*, 948 F.3d 820, 830 (7th Cir. 2020). When the motion's theory concerns bifurcation, the moving party faces a high burden; the ultimate decision to bifurcate under Fed. R. Civ. P. 42(b) is within the district court's discretion, and we will overturn that decision only "upon a clear showing of abuse." *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999). In this case, Walmart is challenging the district court's decision *not* to bifurcate. In applying the deferential abuse of discretion standard here, we determine whether there was a sufficient basis for the district court not to bifurcate the trial and whether that decision unfairly prejudiced Walmart. See *id*. When there is substantial overlap in the facts, evidence, and witnesses, and when the court gives limiting instructions to the jury, the balance favors a unified trial. See *Houskins v. Sheahan*, 549 F.3d 480, 495–96 (7th Cir. 2008). A district court's clear instructions to a jury to view potentially emotionally charged evidence only in assessing damages but not liability is a factor weighing against any need for a bifurcated trial. See *Berry v. Deloney*, 28 F.3d 604, 610 (7th Cir. 1994).

Walmart has not seriously disputed that there was overlap in witnesses, facts, and evidence for the liability and damages portions of the trial. The district court "determined that the efficiency of trying liability and damages together outweighed any potential prejudice to Walmart because the evidence related to damages would be minimal given Reina's life was quite limited to begin with."

With no recourse to challenge the efficiency side of the scale, Walmart focuses on unfair prejudice. But Walmart will

Case: 3:17-cv-00739-jdp   Document #: 256-2   Filed: 08/22/22   Page 14 of 18
Case: 20-3473   Document: 00714055011   Filed: 08/22/2022   Pages: 18

14                                              Nos. 20-3473 & 21-1124

find no recourse here either. The district court gave clear limiting instructions to the jury on emotional evidence and systematically delineated the liability and damages questions. The court instructed the jury to perform its duties "fairly and impartially" and to "not allow sympathy, fear, or public opinion to influence" it. For the liability questions, the court told the jury: "You should not concern yourselves with whether Walmart's actions were wise, reasonable, or fair. Rather, your concern is only whether the EEOC has proved that Walmart violated the ADA." The district court cabined the question of "emotional pain" to the damages portion of the trial and reiterated that the punitive damages award "should not reflect bias, prejudice, or sympathy toward any party." Time and again, the district court gave limiting instructions to mitigate any potential prejudice to Walmart due to a unified trial. And nothing in the record disposes us to disagree with the district court's conclusion that judicial efficiency favored no bifurcation in this case. There's no clear showing of abuse here to warrant overturning the district court's decision not to bifurcate the trial, so the denial of Walmart's motion for a new trial on that theory must be affirmed.

III

The EEOC cross-appeals, claiming that the district court was wrong to reject its request for injunctive relief, and asks us to vacate the denial and remand for further proceedings. The EEOC sought an injunction that would require Walmart to do the following over a period of three years: First, Walmart would be required not to discriminate against disabled employees as required by the ADA, to engage in the interactive process, and to consider the use of a job coach or aide as a reasonable accommodation where it does not impose an

undue hardship on Walmart; second, Walmart would be required to adopt a checklist for all employees involved in the reasonable accommodation determination process, including detailed requirements on logging employee opinions, requests, and reports on accommodations as well as requirements for Walmart to maintain and review the checklist; third, Walmart would be required to give all its employees involved in the reasonable accommodation process two hours of live training on the ADA within 150 days, followed by annual one-hour trainings, including the presence of a manager from the home office who is in a position superior to the highest-ranking person being trained.

The district court rejected the motion for injunctive relief. It first noted facts suggesting that Walmart's conduct would not recur, such as Scheuerell's leaving Walmart's employ, lack of evidence that current management harbored discriminatory animus against disabled persons, and that no similar ADA claims had been filed in that district during the four years since the conduct at issue. The district court also observed that the first of the EEOC's categories of requirements constituted obey-the-law provisions, which the district court described as "generally disfavored as being overly broad and vague." Finally, the court found the checklist requirement not only overly broad but redundant with Walmart's current procedures, especially when there was no evidence of a pattern or practice of discrimination.

The EEOC now cross-appeals on a twofold theory. First, the EEOC claims the district court applied incorrect legal standards in its analysis by considering whether Walmart had engaged in a pattern or practice of discrimination or whether Walmart had employees that harbored discriminatory

Case: 3:17-cv-00739-jdp   Document #: 256-2   Filed: 08/22/22   Page 16 of 18
Case: 20-3473   Document: 00714055011   Filed: 08/22/2022   Pages: 18

16                                    Nos. 20-3473 & 21-1124

animus. Second, the EEOC claims the district court erred by not evaluating whether the obey-the-law, job coach, and checklist provisions were tailored to the facts of the case.

We review a district court's denial of injunctive relief for abuse of discretion, its factual determinations for clear error, and its legal conclusions de novo, and we give deference to the court's balancing of equitable factors. *LAJIM, LLC v. GE*, 917 F.3d 933, 945 (7th Cir. 2019). A legal error may be sufficient grounds for reversal. *3M v. Pribyl*, 259 F.3d 587, 597 (7th Cir. 2001). Still, abuse of discretion "means something more than our belief that we would have acted differently if placed in the circumstance confronting the district judge." *Anderson v. United Parcel Serv.*, 915 F.2d 313, 315 (7th Cir. 1990) (quotations omitted). The district court's central task is to consider whether the employer's discriminatory conduct could possibly persist into the future. *EEOC v. AutoZone, Inc.*, 707 F.3d 824, 840 (7th Cir. 2013).

The EEOC contends that the district court committed legal error by focusing on whether Walmart had engaged in a pattern or practice of discrimination and whether current employees harbor discriminatory animus. Essentially, the EEOC's argument is that the district court should not have considered anything else beyond the *Autozone* central inquiry of whether illegal conduct could "possibly persist in the future." *Id.* at 840. This argument is flawed, first, because the district court did consider the risk that similar violations will occur in the future and listed a number of factors supporting its conclusion that Walmart's conduct was not likely to recur. And it was not error for the district court to cite the absence of both discriminatory animus and pattern or practice of discrimination. The EEOC correctly notes that the "pattern or

Nos. 20-3473 & 21-1124 17

practice" concept is a factor, not a necessary element, in determining an injunction. See *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1578 (7th Cir. 1997). A district court's consideration of the existence or absence of pattern or practice is not foreclosed as evidence in deciding whether illegal conduct is likely to recur. See *Autozone*, 707 F.3d at 840. So too can a district court look to evidence of existence or absence of discriminatory animus among employees as a factor. Evaluating and balancing factors is the quintessential discretionary role of district courts in determining whether an injunction is warranted, and the courts may look to the existence or nonexistence of factors as appropriate. Where the presence of discriminatory animus or pattern makes future bad conduct more likely to occur, the absence of those factors makes future bad conduct less likely to occur. It's not legal error to note such absence.

The EEOC's second argument is that the district court failed to address whether the injunction's provisions were tailored to the conduct. We evaluate obey-the-law injunctions with "great care," upholding them "only where the evidence suggests that the proven illegal conduct may be resumed." *Id*. at 842. They may be appropriate in situations "when the victorious employee remains at the company or has been reinstated; where the particular employees or supervisors responsible for the illegal conduct remain at the company; and/or where the employer has taken some particular action—like withdrawing an accommodation policy—that convinces the court that voluntary compliance with the law will not be forthcoming." *Id*. at 842–43. Although the EEOC complains that the district court disposed of these provisions in one sentence, the district court gave sufficient reasoning that no evidence suggested proven illegal conduct might be resumed.

18                          Nos. 20-3473 & 21-1124

And none of the other example situations listed in *Autozone* apply to the facts in this case. Additionally, the job coach and checklist requirements were adequately analyzed by the district court, which again based its reasoning on case-specific factors and the context of its determination that Walmart's conduct was unlikely to recur. In evaluating factors and concluding that "this incident at one store involved unique circumstances that do not justify the far-reaching injunction that EEOC seeks," the district court did not abuse its discretion.

                                                                          AFFIRMED